[No. B125965. Second Dist., Div. Four. Dec. 29, 1998.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
REBECCA PETERS, Real Party in Interest.

1168

COUNSEL

Franscell, Strickland, Roberts & Lawrence, Scott D. MacLatchie and Ann M. Maurer for Petitioner.

No appearance for Respondent.

Don Lindo for Real Party in Interest.

OPINION

**VOGEL (C. S.), P. J.—**

INTRODUCTION

Plaintiff Rebecca Peters alleges that after plaintiff posted bail, the Sheriff of Los Angeles County and his deputies nevertheless detained plaintiff in the Los Angeles County jail for an additional 10 days, in reliance on a warrant which they reasonably should have known did not relate to her. Plaintiff seeks damages from the County of Los Angeles under the Federal Civil Rights Act, 42 United States Code section 1983 (hereinafter section 1983). A local entity such as the county can be liable under section 1983 only if the deprivation of rights was caused by an official policy or custom of the county, set by the county's lawmakers or by an official who speaks with final policymaking authority for the county. We hold plaintiff fails to plead a valid cause of action because, in setting the policies governing release of prisoners from the Los Angeles County jail, the Los Angeles County Sheriff acts as a state official rather than a policymaking official for the County of

Los Angeles. (See *McMillian* v. *Monroe County* (1997) 520 U.S. 781 [117 S.Ct. 1734, 138 L.Ed.2d 1] (*McMillian*) [county sheriff in Alabama held to be a state official when acting in his law enforcement capacity]; *Pitts* v. *County of Kern* (1998) 17 Cal.4th 340 [70 Cal.Rptr.2d 823, 949 P.2d 920] (*Pitts*) [county district attorney held to be a state official when preparing to prosecute and when prosecuting crimes and when making policy or training employees in these areas].) We grant the county's petition for a writ of mandate to compel the superior court to sustain a demurrer to plaintiff's third cause of action against the county under section 1983.

## FACTUAL AND PROCEDURAL BACKGROUND

In a first amended complaint filed June 17, 1998, plaintiff sued the County of Los Angeles, Los Angeles County Sheriff Sherman Block (who has since died), and Does 1-40. Plaintiff asserted four causes of action, the only one of which concerns us here is the third, which attempts to plead a cause of action for damages under section 1983 against the County of Los Angeles. It is described as plaintiff's *Monell* cause of action, based on *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658 [98 S.Ct. 2018, 56 L.Ed.2d 611] (*Monell*), which holds that a local entity may be sued directly under section 1983 only when the alleged deprivation of rights "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or when the injury is in "execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." (436 U.S. at pp. 690, 694 [98 S.Ct. at pp. 2035-2036, 2037-2038].)

Plaintiff alleged factually that between June 18, 1997, and June 28, 1997, plaintiff was imprisoned "without lawful justification, as plaintiff had posted bail to be released on or about June 18, 1997, but said defendants continued to detain plaintiff, in purported reliance on a warrant that they each knew or reasonably should have known did not apply to plaintiff." Plaintiff alleged, on information and belief, that Sheriff Block "was responsible for the development, establishment and/or implementation of the procedures, policies, regulations, practices and/or customs of the Los Angeles County Sheriff's Department ('LASD') with respect to its detention and release of prisoners." Plaintiff alleged there was an official policy of detaining, arresting, imprisoning, searching and harassing persons based on warrants for the arrest of other people; of failing to properly investigate claims of persons that they are not the person named in the warrant; and of failing to properly train, supervise, control, and discipline officers to prevent violations of the rights of persons wrongly arrested.

The county demurred to the third cause of action on the ground that, by analogy to *McMillian* and *Pitts*, the Sheriff of Los Angeles County acted as a state official rather than a policymaking county official, therefore Los Angeles County cannot be liable for damages under section 1983. Plaintiff opposed the demurrer, attempting to distinguish *McMillian* and *Pitts* and contending that the sheriff acted as a county official in setting policies governing the county jail.

The trial court overruled the demurrer. The court stated, "[o]n balance, . . . it appears that in operating the county jail system and setting up policies for the release of prisoners who have posted bail, the sheriff is acting as a local policy maker rather than as a state official who is immune from liability."

The county petitioned to this court for a writ of mandate to compel the trial court to sustain the demurrer. We issued an order to show cause why the writ should not issue. Having considered plaintiff's return to the order to show cause, and oral argument, we grant the writ.

DISCUSSION

*Propriety of Writ*

██ Appellate courts are reluctant to intervene by extraordinary pretrial writ in matters of pleading. Occasionally an issue of great public importance prompts the court to depart from this policy. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) The recent decisions by the United States Supreme Court in *McMillian* and the California Supreme Court in *Pitts* raise important legal issues concerning the liability of local public entities for alleged violations of the Federal Civil Rights Act. If, as contended, the County of Los Angeles cannot be liable for policies of the Los Angeles County Sheriff because the sheriff acted as a state official, the county should not be compelled to defend this claim, or other similar cases. We issued an order to show cause so as to promptly resolve this important question of law.

*Legal Background Regarding Potential Liability Under Section 1983*

██ State courts have concurrent jurisdiction with federal courts to entertain suits brought under section 1983. (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125].) That statute provides in pertinent part, "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." (§ 1983, italics added.)

 States, and state officials sued in their official capacity, are not considered "persons" who can be sued, either in state or federal court, for damages under section 1983. (*Will* v. *Michigan Dept. of State Police* (1989) 491 U.S. 58, 71 [109 S.Ct. 2304, 2312, 105 L.Ed.2d 45].) Local governmental units such as counties or municipalities, on the other hand, are "persons" within the meaning of section 1983. (*Monell, supra,* 436 U.S. at pp. 690-691 & fn. 54 [98 S.Ct. at p. 2035-2036]; *Will* v. *Michigan Dept. of State Police, supra,* 491 U.S. at p. 70 [109 S.Ct. at p. 2312].) A local governmental unit cannot be liable under this section for acts of its employees based solely on a respondeat superior theory. A local governmental unit is liable only if the alleged deprivation of rights "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or when the injury is in "execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." (*Monell, supra,* 436 U.S. at pp. 690, 691, 694 [98 S.Ct. at pp. 2035-2036, 2037-2038].)

 Thus, if the actions and policies at issue in this case are not official policies of the County of Los Angeles, because the Los Angeles County Sheriff acted in his capacity as a state official rather than a local policymaker for the county, the County of Los Angeles is not liable to suit under section 1983. (*McMillian, supra,* 520 U.S. at pp. 784-785 [117 S.Ct. at p. 1736].)

### *Standard of Review Applicable to This Petition*

 Identification of those officials whose decisions represent the official policy of a local governmental unit presents a question of law. (*Pitts, supra,* 17 Cal.4th at p. 352; *Jett* v. *Dallas Independent School Dist.* (1989) 491 U.S. 701, 737 [109 S.Ct. 2702, 2723-2724, 105 L.Ed.2d 598].) The determination whether a particular official acts for the state, on the one hand, or for the local governmental unit, on the other hand, is a question of law depending primarily upon the definitions of the official's functions contained in state constitutional, statutory, and decisional law. (*Pitts, supra,* 17 Cal.4th at pp. 352-353; *McMillian, supra,* 520 U.S. at p. 785 [117 S.Ct. at p. 1737].) Plaintiff's suggestion that resolution of this issue is for the trial court's "discretion" is inconsistent with *Pitts, supra,* 17 Cal.4th at pages 352-353.

This determination does not require an "all-or-nothing" categorization applying to every type of conduct in which the official may engage. Rather, the issue is whether the official is a local policymaker with regard to the particular action alleged to have deprived the plaintiff of civil rights. (*Pitts, supra*, 17 Cal.4th at p. 353; *McMillian, supra*, 520 U.S. at p. 785 [117 S.Ct. at p. 1737]; *Jett* v. *Dallas Independent School Dist., supra*, 491 U.S. at p. 737 [109 S.Ct. at pp. 2723-2724]; *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 653, 657 [83 Cal.Rptr. 41].)

*Analysis*

In *McMillian, supra*, 520 U.S. 781, involving a county sheriff in Alabama, the United States Supreme Court established the principles and analytical framework governing this issue. In *Pitts, supra*, 17 Cal.4th 340, the California Supreme Court applied *McMillian* to a county district attorney in California.

In *McMillian*, a prisoner whose conviction had been reversed sued the Sheriff of Monroe County, Alabama, in his official capacity, alleging that the sheriff intimidated a witness to make false statements and suppressed exculpatory evidence. The United States Supreme Court concluded the county was not liable, because in performing his law enforcement duties the sheriff represented the state, not the county. The court first considered the Alabama Constitution's provisions regarding sheriffs, the historical development of those provisions, and the Alabama Supreme Court's interpretation of them. For reasons specific to Alabama, those provisions expressly made county sheriffs members of the "executive department" of the state. (520 U.S. at pp. 785-789 [117 S.Ct. at pp. 1737-1739].) The court next considered various Alabama statutes. It noted that the statutes gave sheriffs complete authority to enforce the state criminal law in their counties. There were no provisions giving counties, as such, any authority over enforcement of the criminal law or supervisory powers over sheriffs in regard to "how to ferret out crime, how to arrest a criminal, or how to secure evidence of a crime." (520 U.S. at pp. 790-791 [117 S.Ct. at p. 1739].) Furthermore, "[w]hile the county commission thus has no direct control over how the sheriff fulfills his law enforcement duty, the governor and the attorney general do have this kind of control." (*Ibid.*)

The Supreme Court weighed these factors against various other Alabama statutory and constitutional provisions which were cited in favor of treating the sheriff as a county policymaker. Thus, the sheriff's salary and expenses were paid out of county funds, the sheriff's territorial jurisdiction was limited to the county, and the sheriff was elected by county voters. (*McMillian, supra*, 520 U.S. at p. 791 [117 S.Ct. at p. 1740].) The court concluded,

"In sum, although there is some evidence in Alabama law that supports petitioner's argument, we think the weight of the evidence is strongly on the side of the conclusion reached by the Court of Appeals: Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." (*Ibid.*)

In *Pitts*, the California Supreme Court applied these principles to a county district attorney in California. The plaintiffs, whose multiple convictions of child molestation had been reversed, sued the Kern County District Attorney, the deputy district attorney who was the chief prosecutor, and the district attorney's sex abuse program coordinator. The allegations involved the district attorney's actions in preparing to prosecute and prosecuting crime, and in establishing policy and training in these areas. The California Supreme Court concluded, as a matter of law based upon pertinent California constitutional and statutory provisions, that in performing those func- tions a district attorney represents the state, not the county.

The court noted first that under article V, section 13 of the California Constitution, and Government Code section 12550, the state Attorney General, chief law enforcement officer of the state, has direct supervision over district attorneys. (*Pitts, supra*, 17 Cal.4th at pp. 356-358.) The court stated, "[i]n contrast, the county board of supervisors is statutorily barred from obstructing the district attorney's investigative or prosecutorial function. While Government Code section 25303 generally provides that the 'board of supervisors shall supervise the official conduct of all county officers . . . ,' it further states that '[t]his section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the . . . district attorney of a county. The board of supervisors shall not obstruct the . . . investigative and prosecutorial func- tion of the district attorney of a county.' " (*Id.* at p. 358.) Citing additional statutory and decisional law for the proposition that a district attorney represents the state in enforcing the criminal law, the court concluded, ". . . it is difficult to imagine how a district attorney's enforcement of state law could be characterized as creating local policy." (*Id.* at p. 360.)

The court weighed other provisions which were cited for the contrary result. The court noted that a district attorney is elected by county voters, must be a registered voter of the county, and is generally limited in authority to the territory of the county. The court concluded these limitations are not inconsistent with the characteristic of district attorneys as state officials locally placed throughout the state. (*Pitts, supra*, 17 Cal.4th at pp. 360-361.) The court also considered that a county sets the district attorney's salary and pays necessary expenses as county charges, but concluded these were attenu- ated and remote influences which did not outweigh contrary considerations

and the express statutory prohibition against interfering with the district attorney's investigative and prosecutorial functions. (*Id.* at p. 361.)

In *Pitts* the plaintiffs contended that even if a district attorney acts as a state official when preparing to prosecute or prosecuting criminal violations, a district attorney represents the county "when he establishes policy or trains employees in these areas." The court rejected the proposed distinction as unworkable, and concluded the latter functions were inseparable from the district attorney's prosecutorial function. (*Pitts, supra*, 17 Cal.4th at pp. 362-363.) It added that the Attorney General's oversight power, under article V, section 13 of the California Constitution and Government Code section 12550, extends to all duties of the district attorney's office. (17 Cal.4th at p. 363.)

Thus, based upon its balancing of the various constitutional and statutory provisions, the court concluded "[i]n sum," as a matter of law, that the district attorney acted on behalf of the state, not the county. (*Pitts, supra*, 17 Cal.4th at pp. 352-353, 366.)

 Applying *McMillian* and *Pitts* to the present case, we likewise conclude that in establishing policies for the release of persons from a county jail, a sheriff acts as a state official, not a policymaker for the county.

Plaintiff points out several easily distinguishable features of Alabama law considered in *McMillian*. (Due to a history of local sheriffs' failing to enforce the law, the Alabama Constitution expressly designated sheriffs as members of the state executive department, and sheriffs' salaries were set by the state.) This in no way detracts from the controlling authority of the California Supreme Court in *Pitts*. *Identical* provisions governing California district attorneys, considered in *Pitts*, also apply to California sheriffs.

Thus, article V, section 13 of the California Constitution provides, "Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have *direct supervision over every district attorney and sheriff* and over such other law enforcement officers as may be designated by law, in *all matters pertaining to the duties of their respective offices*, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable." (Italics added.)

Similarly, Government Code section 12560, relating to sheriffs, is the nearly identical counterpart to Government Code section 12550, relating to

district attorneys, cited in *Pitts*. Government Code section 12560 provides, "The Attorney General has *direct supervision over the sheriffs of the several counties of the State*, and may require of them written reports concerning the investigation, detection and punishment of crime in their respective jurisdictions. Whenever he deems it necessary in the public interest he shall direct the activities of any sheriff relative to the investigation or detection of crime within the jurisdiction of the sheriff, and he may direct the service of subpenas, warrants of arrest, or other processes of court in connection therewith."

State law imposes on county sheriffs the duty to enforce criminal law. (Gov. Code, §§ 26600 [sheriff shall preserve peace], 26601 [sheriff shall arrest and take before the nearest magistrate for examination all persons who attempt to commit or have committed a public offense], 26602 [sheriff shall prevent and suppress any affrays, breaches of the peace, riots, and insurrections which come to his knowledge, and investigate public offenses which have been committed].)

Most relevant here, state law provides, "the sheriff shall take charge of and . . . keep the county jail and the prisoners in it." (Gov. Code, § 26605.) "The common jails in the several counties of this State are kept by the sheriffs of the counties in which they are respectively situated, and are used as follows: [¶] 1. For the detention of persons committed in order to secure their attendance as witnesses in criminal cases; [¶] 2. For the detention of persons charged with crime and committed for trial; [¶] 3. For the confinement of persons committed for contempt, or upon civil process, or by other authority of law; [¶] 4. For the confinement of persons sentenced to imprisonment therein upon a conviction for crime." (Pen. Code, § 4000.)

In *Pitts,* the court noted that boards of supervisors have no direct control over how district attorneys perform their law enforcement function. (*Pitts, supra,* 17 Cal.4th at pp. 358-359, citing, e.g., *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 240 [138 Cal.Rptr. 101]; and Gov. Code, § 25303.) The same analysis holds true for sheriffs. Government Code section 25303 provides that although generally "[t]he board of supervisors shall supervise the official conduct of all county officers, . . . [¶] [t]his section shall not be construed to affect the *independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff of the county* nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county. [¶] Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff." (Italics added.)

In *Brandt* v. *Board of Supervisors* (1978) 84 Cal.App.3d 598 [147 Cal.Rptr. 468], the plaintiffs filed a petition for a writ to compel the board of supervisors to perform an asserted mandatory duty concerning certain conditions in the county jail. The appellate court held the board had no clear ministerial duty that could be compelled by writ. It commented, "[t]he responsibility for operating jails in this state is placed by law upon the sheriff (Pen. Code, § 4000). He is enjoined by statute to take charge of and keep the county jail and the prisoners in it (Gov. Code, §§ 26605, 26610). . . . [¶] Except in rare instances, the board of supervisors has no direct authority over the jail . . . . The only clear and present duty enjoined by law upon a board of supervisors with regard to a county jail is to provide the sheriff with food, clothing, and bedding for prisoners (Pen. Code, § 4015) and to pay as a county charge other expenses incurred in the keeping of prisoners (Gov. Code, § 29602). . . . [¶] . . . [¶] We note that the board not only had no duty but also had no right to control the operation of the jail; a board of supervisors has no legal authority to use its budgetary power to control employment in or operation of the sheriff's office (see *Hicks* v. *Board of Supervisors*[, *supra*,] 69 Cal.App.3d 228, 241.) Only the sheriff has control of and responsibility for distribution and training of personnel and the specific use of the funds allotted to him." (*Brandt* v. *Board of Supervisors, supra*, 84 Cal.App.3d at pp. 601-602.)

As in *McMillian* and *Pitts,* various other provisions could be cited in support of the argument that the sheriff should be considered a county official for the purpose of the county's liability under section 1983. For example, article XI, section 1, subdivision (b) of the California Constitution states, "[t]he Legislature shall provide for county powers, *an elected sheriff,* an elected district attorney, an elected assessor, and an elected governing body in each county." (Italics added.) Article XI, section 4, subdivision (c) of the California Constitution states that county charters shall provide for "[a]*n elected sheriff,* an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms and removal." (Italics added.) Government Code section 24000 provides, "[t]he officers of a county are: [¶] . . . [¶] (b) A sheriff." These provisions were considered in *Pitts, supra,* 17 Cal.4th at pages 360-361, as they related to district attorneys, and were found not to outweigh other provisions treating district attorneys as state officers. Similarly here, these formal designations of sheriffs as county officials are outweighed by the functional independence of sheriffs from control by county boards of supervisors in performing their law enforcement functions. (*Brandt* v. *Board of Supervisors, supra*, 84 Cal.App.3d at p. 602 [sheriff]; *Pitts, supra,* 17 Cal.4th at p. 361 [district attorney]; Gov. Code, § 25303 [sheriffs and district attorneys].)

Plaintiff's argument downplaying the role of the state Attorney General in the sheriff's day-to-day operation of the jail is misplaced. Plaintiff assumes

that if the sheriff, rather than the Attorney General, operates the county jail, then the sheriff ipso facto does so as a policymaking county official. This argument misses the above point that the sheriff operates the jail pursuant to the sheriff's constitutional and statutory law enforcement powers, and not as a policymaker for the board of supervisors, which has no direct control over the sheriff in this regard. (Gov. Code, § 25303; *Brandt* v. *Board of Supervisors, supra,* 84 Cal.App.3d at p. 602.)[1]

Cases cited by plaintiff which were decided before *McMillian* have limited precedential value. (See *Pembaur* v. *Cincinnati* (1986) 475 U.S. 469, 481, 485 [106 S.Ct. 1292, 1299, 1301, 89 L.Ed.2d 452] [court assumed without discussion that sheriff and district attorney were county policymakers whose decisions subjected county to liability]; *Thompson* v. *City of Los Angeles* (9th Cir. 1989) 885 F.2d 1439, 1444 [court assumed for discussion that the sheriff was the official policymaker for the county in regard to arrestee detention]; *McMillian, supra,* 520 U.S. at pp. 795-796, fn. 10 [117 S.Ct. at p. 1742] [citing prior decisions from different jurisdictions reaching different results as to whether a sheriff was a local policymaker for the purpose of section 1983 liability].) *McMillian* provides the relevant guidance applicable to this case.

Plaintiff suggests the sheriff is a policymaker for the county in "the specific function of operating the county jail system." This attempt to characterize the sheriff's conduct as merely operational or administrative is not persuasive on the facts of this case. The function involved in this case is determining whether to release a person who may be subject to arrest on an outstanding warrant. This is a law enforcement function. (Gov. Code, §§ 26601, 26602; Pen. Code, § 816; compare *Pitts, supra,* 17 Cal.4th at pp. 362-363 [rejecting any distinction between prosecuting and setting policies

---

[1]Plaintiff's argument takes out of context certain language in *People* v. *Brophy* (1942) 49 Cal.App.2d 15 [120 P.2d 946]. The issue there was the propriety of a telephone company cutting off service to an alleged bookmaking operation, on the mere request of the Attorney General. The court questioned the Attorney General's authority, and it was in that context it said, "[the constitutional authority of the Attorney General to supervise sheriffs and district attorneys is] not without limitation. Manifestly 'direct supervision . . .' does not contemplate absolute control and direction of such officials. [Sheriffs and district attorneys] are public officers . . . with public duties . . . the performance of which is an exercise of a part of the governmental functions of the particular political unit for which they, as agents, are active. [Citation.] Moreover, [they] are officers created by the Constitution. . . . [A sheriff or district attorney has no excuse] to yield the general control of his office and duties to the Attorney General." (*Id.* at p. 28.)

A more recent comprehensive discussion of the constitutional and statutory powers of sheriffs is contained in *Beck* v. *County of Santa Clara* (1988) 204 Cal.App.3d 789, 793-802 [251 Cal.Rptr. 444] (upholding constitutionality of Government Code section 23013 which authorizes a board of supervisors to establish a local department of corrections headed by an appointed official, with jurisdiction over the county jail).

or training employees how to prosecute] with *id.* at p. 363 ["Our conclusion as to which entity the district attorney represents might differ were plaintiffs challenging a district attorney's alleged action or inaction related to hiring or firing an employee, workplace safety conditions, procuring office equipment, or some other administrative function arguably unrelated to the prosecution of state criminal law violations. Those considerations are not presented here."].)

We conclude that in setting policies concerning release of persons from the Los Angeles County jail, the Los Angeles County Sheriff acts as a state officer performing state law enforcement duties, and not as a policymaker on behalf of the County of Los Angeles. The county's demurrer to plaintiff's third cause of action alleging liability of the county under section 1983 should have been sustained.

## DISPOSITION

Let a peremptory writ issue commanding the superior court to sustain, without leave to amend, the demurrer of the County of Los Angeles to the third cause of action of plaintiff's first amended complaint. The order to show cause, having served its purpose, is discharged. Costs are awarded to the County of Los Angeles.

Epstein, J., and Curry, J., concurred.

A petition for a rehearing was denied January 26, 1999, and the petition of real party in interest for review by the Supreme Court was denied March 17, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.