## Thomas BREWSTER, Plaintiff,

v.

## COUNTY OF SHASTA, a public entity; Shasta County Sheriff's Department, a public entity; Brad McDannold, an individual; D. Compomizzo, an individual; California Department of Justice, a public entity, Defendants.

### No. CIV.S–98–2157 LKK/PAN.

United States District Court, E.D. California.

Sept. 22, 2000.

---

David Alan Prentice, Prentice and Schaap, Sacramento, CA, for Thomas Brewster.

John H. Hager, Jr., Law Offices of John Hager, San Francisco, CA, for Shasta County, Shasta County Sheriff's Dept., Brad McDannold, D. Compomizzo.

## ORDER

KARLTON, Senior District Judge.

Plaintiff sues the County of Shasta and two deputies of the Shasta County Sheriff's Department alleging various violations of his constitutional rights. He argues that the County of Shasta is liable for injuries caused by the execution of the Shasta County Sheriff's policies concerning suspect arrests and crime investigations because the Sheriff is a final policymaker for County. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The County moves for summary judgment and contends that California sheriffs represent the state and not the county when they effectuate arrests and investigate crimes, and thus the County cannot be held liable under 42 U.S.C. § 1983 for plaintiff's alleged injuries. Below, I resolve that claim.[1] As I now explain, however, the law relative to this issue is less than pellucid.

 It is established that states are not amenable to suit under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). It is equally well established, however, that county governments and their law enforcement agencies may be sued for damages under the Civil Rights Act of 1871. *See Monell*, 436 U.S. at 690, 98 S.Ct. 2018; *Anthony v. County of Sacramento*, 898 F.Supp. 1435, 1451 (E.D.Cal. 1995).

 While a county may be sued under § 1983, it is not liable "solely because it employs a tortfeasor...." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to present official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018. Because the county must be the "moving force" behind the injury in order to be liable, *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citation omitted), a county is not liable for the conduct of a nominal county official who, in fact, acts as a state official. *See McMillian v. Monroe*

---

1. By a separately filed non-published order, I resolve the remaining issues raised in the county's summary judgment motion. *See*

*Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148, 151, n. 2. (1981), *rev'd on other grounds*, 691 F.2d 873 (9th Cir.1982).

*County, Alabama,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). Moreover, because a suit for damages against state officials in their official capacities is, in effect, a suit against the state, the Eleventh Amendment bars such an action. *See id.*[2]

The determination of whether a county official acts for the state or for the county is a question of law, *see Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), which, as a first consideration, turns on how the state defines the official's functions. *See McMillian,* 520 U.S. at 786, 117 S.Ct. 1734.[3] Because initially state law defines the relationship of sheriffs to the state, a determination of that relationship may vary from one jurisdiction to another.[4] Thus, to resolve the present motion I must turn to California law to determine the status of a county sheriff. As will become apparent, Califor-

nia has not addressed this question with a single voice or a single answer.[5]

Subsequent to *McMillian,* the California Supreme Court, analyzing the California Constitution and various California statutes, concluded that a district attorney represents the State when prosecuting crimes and when training employees concerning the prosecution of crimes. *See Pitts v. County of Kern,* 17 Cal.4th 340, 353, 70 Cal.Rptr.2d 823, 949 P.2d 920 (1998). A California Court of Appeal, analyzing the same state law provisions addressed in *Pitts,* and noting that the words "sheriff" and "district attorney" appear in tandem in many of the cited authorities, concluded that California county sheriffs act as state officials when they establish policies concerning the release of persons from county jails. *See County of Los Angeles v. Superior Court of Los Aangeles (Peters),* 68 Cal.App.4th 1166, 1174, 80 Cal. Rptr.2d 860 (1998).[6]

2. Of course, suits under § 1983 lie against government officials, state or local, sued in their individual capacity for injuries caused by their conduct in violation of the plaintiff's established constitutional rights. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Personal-capacity suits seek to ·impose personal liability upon a government official for actions he takes under color of state law.")

3. In *McMillian,* the High Court held that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793, 117 S.Ct. 1734. To reach this conclusion, the Court considered various Alabama statutes, *see id.* at 789–90, 117 S.Ct. 1734, and the state "constitutional provisions concerning sheriffs, the historical development of those provisions, and the interpretation given them by the Alabama Supreme Court...." *Id.* at 787, 117 S.Ct. 1734.

4. The High Court explained that "it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, [and thus] there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another." *Id.* at 795, 117 S.Ct. 1734. ·

5. As I have previously explained, in resolving questions of California law, this court "is

bound by the pronouncements of the California Supreme Court," *Ortland v. County of Tehama,* 939 F.Supp. 1465, 1468 (E.D.Cal. 1996) (citing *Minnesota ex rel. Pearson v. Probate Court,* 309 U.S. 270, 273, 60 S.Ct. 523, 84 L.Ed. 744 (1940)), and the opinions of the California Courts of Appeal are merely "data for determining how the highest California court would rule." *Ortland,* 939 F.Supp. at 1468 (quoting *Scandinavian Airlines System v. United Aircraft Corp.,* 601 F.2d 425, 427 (9th Cir.1979) (internal quotation marks omitted)). While in the absence of other evidence, the opinions of California courts of appeal on questions of California law cannot simply "be ignored[,]" *Ortland,* 939 F.Supp. at 1468, a conflicting decision of the Ninth Circuit obligates adherence by this court to the Circuit's decision and rejection of the non-binding California precedent. *See, e.g., United States v. Mitlo,* 714 F.2d 294, 298 (3d Cir.1983).

6. The persuasive force of *Peters* as to this court is significantly undermined by virtue of Ninth Circuit precedent holding that a sheriff is "the county official that state law indicates is the official policymaker regarding arrestee detention in [the] County jail." *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir.1989) (citing Cal. Gov't Code § 26605). *See* n. 5, *supra.*

The *Peters* Court cited article V, section 13 of the California Constitution[7] and Cal. Gov't Code § 12560[8] which generally provide that sheriffs are under the supervision of the State Attorney General. The *Peters* Court also cited Cal. Gov't Code § 26600 which "imposes on county sheriffs the duty to enforce criminal law" and Cal. Gov't Code § 25303 which provides that county boards of supervisors may not, pursuant to their general powers of supervision over county officers, "affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff...." *Id.* at 1175, 80 Cal.Rptr.2d 860.

■ While *Pitts* and *Peters* are suggestive of the resolution of the issue at bar, they are not directly determinative as *Pitts* deals with district attorneys and *Peters* addresses the function of California sheriffs relative to administering county jails.[9] Moreover, as I now demonstrate, other California cases demonstrate that there is significant ambiguity as to the status of sheriffs under California law.

In *Dibb v. County of San Diego*, 8 Cal.4th 1200, 36 Cal.Rptr.2d 55, 884 P.2d 1003 (1994), the California Supreme Court upheld the right of San Diego County to establish a citizen police review board to consider public complaints about the county sheriff's department. In doing so, the court cited to Cal. Gov't Code § 25303[10] and rejected the argument that § 25303 limited the county's authority to monitor county officers solely to their fiscal conduct. *See id.* at 1209, 36 Cal.Rptr.2d 55, 884 P.2d 1003. Rather, the court observed that, under that statute, a county board of supervisors has the power "to supervise

---

7. That article provides:

 Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdiction as to the Attorney General may seem advisable.

8. The statute provides:

 The Attorney General has direct supervision over the sheriffs of the several counties of the state, and may require of them written reports concerning the investigation, detection and punishment of crime in their respective jurisdictions. Whenever he deems it necessary in the public interest he shall direct the activities of any sheriff relative to the investigation or detection of crime within the jurisdiction of the sheriff, and he may direct the service of subpoenas, warrants of arrest, or other processes of court in connection therewith.

9. The question of whether particular officials act for the state or a county is not a categorical "all or nothing" question, but is rather a question of whether or not the official is a "final policymaker[ ] for the local government in a particular area, or on a particular issue." *McMillian*, 520 U.S. at 785, 117 S.Ct. 1734 (citation omitted).

10. Cal. Gov't Code § 25303 provides:

 The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management or disbursement of public funds. It shall see that they faithfully perform their duties, direct prosecutions for delinquency and, when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection.

 This section shall not be construed to the effect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The Board of Supervisors shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county.

 Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff.

the county officials in order to assure that they faithfully perform their duties." *Id.* at 1209, 36 Cal.Rptr.2d 55, 884 P.2d 1003 (citing *People v. Langdon,* 54 Cal.App.3d 384, 390, 126 Cal.Rptr. 575 (1976)) (internal quotation mark omitted). The court further explained that "the operations of the sheriff's department ... and the conduct of employees of th[at] department[ ] are a legitimate concern of the board of supervisors." *Dibb,* 8 Cal.4th at 1209, 36 Cal.Rptr.2d 55, 884 P.2d 1003. The court did not perceive that these general supervisorial powers were in conflict with the obligation of the board not to obstruct the sheriff's office's investigative function. *See id.* at 1210–14, 36 Cal.Rptr.2d 55, 884 P.2d 1003.[11] Moreover, as long ago as 1942, a California court of appeals concluded that supervision by the Attorney General does not alter the status of sheriffs as elected county officials. *See People v. Brophy,* 49 Cal.App.2d 15, 27, 120 P.2d 946 (1942). The *Brophy* Court explained:

> Manifestly "direct supervision [by the Attorney General under article V, section 21 of the California Constitution [12]] over every ... sheriff ..." does not contemplate absolute control and direction of such officials. Especially is this true as to sheriffs
>
> ... as the provision plainly indicates. These officials are public officers, as distinguished from mere employees, with public duties delegated and entrusted to

them, as agents, the performance of which is an exercise of a part of the governmental functions of the particular political unit for which they, as agents, are active.[13]

*Id.*

In sum, while *Pitts* addresses the status of California district attorneys and *Peters* addresses sheriffs only in their function as jail administrators, *Dibb,* represents a direct holding concerning the relationship of county boards of supervisors to sheriffs, but also in a different context, and *Brophy* addresses the relationship of the Attorney General to sheriffs. Under the circumstances, this court must conclude that whether California county sheriffs, when investigating crimes, are county or state officials under California law is unsettled.

As noted above, California's statutory law is also not dispositive. Although under Cal. Gov't Code § 24000 "the officers of the county [include a] sheriff," as noted above the power of boards of supervisors over sheriffs in their investigative function is, by statute, significantly limited.[14]

The uncertain status of California sheriffs under the state's law led this court to seek information concerning another criterion established by the *McMillian* case. The Supreme Court observed that another way of ascertaining the status of a nominal county official is an inquiry into the actual function of the official. *See McMillian,* 520 U.S. at 786, 117 S.Ct. 1734.[15] In that

---

**11.** The *Pitts* Court, however, cited to *Dibb* as evidence of the limited power that a county board of supervisors has over the statutory duties of its nominal officers. *See* 17 Cal.4th at 358, 70 Cal.Rptr.2d 823, 949 P.2d 920.

**12.** Article V, section 21 of the California Constitution was repealed on November 8, 1966 and replaced with article V, section 13 which is identical for the purposes of the matter at bar.

**13.** Indeed, at least one way of viewing the complex status of California sheriffs is to recognize that in California counties are political subdivisions of the state, *see Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), thus explaining the state Attorney General's power of supervision. The

status of political subdivision has, however, never been held to preclude suit against California counties. *See Moor, supra; and see Headwaters Forest Defense v. County of Humboldt,* 211 F.3d 1121 (2000) (County amenable to suit under § 1983 for excessive force claim).

**14.** The limitation on the boards of supervisors does not *ipso facto* transform county sheriffs into state officers. As *Brophy* notes, sheriffs are county officers and thus the limitations may constitute no more than division of responsibility among county officials.

**15.** The Court noted that any effort to merely insulate otherwise local officials from suit was precluded by allowing the plaintiff to prove a

light, this court referred the matter back to the parties for further briefing on the actual practice. Unfortunately, neither party has provided the court with evidence concerning the Attorney General's supervision of the sheriff of Shasta County in his investigative function. There is no evidence about how frequently, if ever, the Attorney General actually supervises the sheriff's conduct of his office, reviews policies adopted by the sheriff, or otherwise limits the discretion of the sheriff as to how his officers shall conduct investigations.[16]

Given the lack of determinative guidance, the question now is how is this court to resolve the issue? If this were a factual issue the mode of resolution would be quite direct: the party bearing the burden of proof, must lose. Here, however, the question is one of law, and thus cannot turn on the burden of persuasion. It appears to this court that the doctrine of *stare decisis* aids the court's resolution of the issue, though it does not command an answer.

The doctrine of *stare decisis*, i.e., the requirement to "adhere to decided cases," *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 953, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (Rehnquist J. concurring in part and dissenting in part) (quoting *Black's Law Dictionary* 1406 (6th ed.1990)) (internal quotation marks omitted), "compels lower courts to follow the decisions of higher courts on a question of law." 18 Coquillette et. al, *Moore's Federal Practice* § 134.01[1] (3d ed.2000). As observed in footnote 5, *supra*, as a general matter, this court must adhere to a holding of the Ninth Circuit

until it is overruled. This obligation is not dependent on the correctness of the Circuit's decision. *See Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (obligated to follow decision "no matter how misguided.") Moreover, it is the holding which binds, not the rationale. *See In re Osborne*, 76 F.3d 306, 309 (9th Cir.1996). Given this constraint on the court, I conclude that the holding in *Thompson*, 885 F.2d 1439, that sheriffs, at least when acting as jail administrators, act as county officials, indicates, and may be under the circumstances, the only basis for resolution of the issue at bar by this court.[17] Because the holding of *Thompson* is that the sheriff is a county official under state law, I will conclude that the sheriff in the matter at bar is a county official.

Candor requires me to acknowledge that *Pitts* and *Peters* suggest that *Thompson* may no longer be viable. On the other hand, *Dibb* and *Brophy* support *Thompson*. Under the circumstances, discretion is the better part of valor, *see Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 741 (7th Cir.1986), and this court will follow *Thompson*'s holding unless overruled by a court which binds this court.

Having reached the conclusion noted above, the court also recognizes that this is clearly a case justifying interlocutory consideration by the Ninth Circuit and accordingly, the court will certify it for interlocutory appeal. Because the issue is central to so much § 1983 litigation, this court will order this opinion published in an effort to overcome the circuit's well-known diffi-

widespread practice had been established by custom or usage. *See id.* at 796, 117 S.Ct. 1734 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion)) (quotation marks omitted).

16. Although the County, in its further briefing, noted that the State requires training of deputies pursuant to standards established and implemented by the state's Department of

Justice, Cal.Penal Code § 832.3, that again fails to address the specific issue at bar.

17. The *Peters* court dismissed *Thompson* as "decided before *McMillian* [and thus] hav[ing] limited precedential value." 68 Cal. App.4th at 1177, 80 Cal.Rptr.2d 860. This treatment of *Thompson* is not available to this court because, unlike the California courts of appeal, this court is bound by Ninth Circuit decisions.

dence relative to interlocutory appeal.[18]

IT IS SO ORDERED.

---

18. Granting an interlocutory appeal should not represent an undue burden on the Ninth Circuit as the determinative matter here turns initially on an issue of California law susceptible to certification to the California Supreme Court. *See* California Rules of Court 29.5.