Thomas BREWSTER, Plaintiff–Appellee,

v.

SHASTA COUNTY, a public entity; Brad McDannold, an individual; D. Compomizzo, an individual, Defendants–Appellants.

No. 01–15118.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2001

Filed Dec. 28, 2001

John Hagar, Law Office of John Hagar, San Francisco, California, for the defendants-appellants.

David A. Prentice, Prentice & Schaap, Sacramento, California, for the plaintiff-appellee.

James H. Thebeau, Deputy County Counsel, Bakersfield, California, for amicus curiae California State Association of Counties.

Stephen Yagman, Yagman & Yagman & Reichmann, Venice Beach, California, for amicus curiae Yagman & Yagman & Reichmann.

Before: HALL, WARDLAW, and BERZON, Circuit Judges.

HALL, Circuit Judge:

This case requires us to decide whether the Shasta County Sheriff's Department, when investigating crime, acts on behalf of the state of California or on behalf of Shasta County. If the sheriff is a county actor, Shasta County may be subject to liability under 42 U.S.C. § 1983 and *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for the sheriff's constitutional torts. We conclude that the sheriff's department, when investigating crime, acts for the county, and therefore that the county is subject to section 1983 liability.

## BACKGROUND

Appellee Thomas Brewster brought suit under 42 U.S.C. § 1983 against the County of Shasta and two Shasta County Sheriff's Department deputies. Appellee alleged that the deputies violated his civil rights during the investigation of a murder and sexual assault by manipulating a witness into giving a false identification, failing to test physical evidence, and ignoring exculpatory evidence. Appellee argued that the county is liable under *Monell* for his injuries caused by the deputies' execution of the Sheriff's policies on arrests and crime investigations because the Sheriff is a final policymaker for the county. Shasta County moved for summary judgment.

Relying on *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), Shasta County argued that the Shasta County Sheriff functions as a state, not a county, official when investigating crime, and therefore the county cannot be sued under section 1983 for the alleged constitutional torts of the sheriff. The district court concluded that a sheriff acts as a county official when investigating crime, and denied the County's motion for summary judgment. *Brewster v. County of Shasta*, 112 F.Supp.2d 1185, 1191 (E.D.Cal.2000). The district court certified its order denying summary judgment for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On December 18, 2000, this court granted the County permission to appeal the order. *See* 28 U.S.C. § 1292(b).

## DISCUSSION

### A.

■ A county is subject to liability under 42 U.S.C. § 1983 if its policies, established by the county's lawmakers or "by those whose edicts or acts ... may fairly be said to represent official policy," caused the constitutional violation at issue. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. The parties agree that the sheriff is the relevant policymaker. The question is whether he is a policymaker on behalf of the state or the county; if he is a policymaker for the state, then the county cannot be liable for his actions. *See, e.g., Streit v. County of Los Angeles*, 236 F.3d 552, 559

(9th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 59, 151 L.Ed.2d 27 (2001). We review the district court's denial of the County's motion for summary judgment de novo. *Weiner v. San Diego County,* 210 F.3d 1025, 1028 (9th Cir.2000).

 Our analysis is governed by the analytical framework set out in *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), in which the Supreme Court concluded that Alabama sheriffs act as policymakers for the state, not the county, when investigating crime. This court applied the *McMillian* analysis to California sheriffs in *Streit v. County of Los Angeles,* 236 F.3d 552 (9th Cir.2001), to conclude that the Los Angeles County Sheriff acts as the final policymaker for the county when administering the county's policy for release from the local jails. *McMillian* instructs, however, that we must inquire "whether governmental officials are final policymakers for the local government in a particular area or on a particular issue." 520 U.S. at 785, 117 S.Ct. 1734. Our analysis in *Streit* thus does not resolve the question of Shasta County's liability in this case, because the sheriff's function of investigating crime was not at issue in *Streit.*[1] *McMillian* further instructs that although the question of county liability under section 1983 is a question of federal law, "our inquiry is dependent on an analysis of state law," including the state's constitution, statutes, and case law. *McMillian,* 520 U.S. at 786, 117 S.Ct. 1734. Thus, although *Streit* does not resolve the question presented in the instant case, the analysis of California law governing sheriffs already undertaken in *Streit* provides the starting point for our own analysis.[2]

## B.

The question in *Streit* was whether a California sheriff, in administering the county's policy for release from county jails, acted for the county or the state. We began our analysis with an examination of the California Constitution, which identifies California sheriffs as county officials. Unlike the Alabama Constitution that the Supreme Court considered in *McMillian,* "the California Constitution does not list sheriffs as part of 'the state executive department.'" *Streit,* 236 F.3d at 561 (quoting *McMillian,* 520 U.S. at 787, 117 S.Ct. 1734) (internal quotation marks omitted). "Instead, Article XI, section 1(b) of the California Constitution designates sheriffs as county officers." *Id.* Further, "there is no provision in the California Constitution that states that the [sheriff] acts for the state when managing the local jails." *Id.*

We next determined that several provisions of the California Code support the conclusion that the sheriff acts for the county when administering the local jails.

---

1. We recognize that some language in *Streit* may be read to suggest that California sheriffs are state actors when acting in some of their law enforcement capacities. However, the sheriff's investigative function was not before the court in *Streit. McMillian* clearly instructs that determination of whether a sheriff is a state or county actor depends on an analysis of the precise function at issue, in this case, the sheriff's crime investigation function.

2. The district court relied on our decision in *Thompson v. City of Los Angeles,* 885 F.2d

1439 (9th Cir.1989). *Thompson,* which predates *McMillian,* does not control this case. *Thompson* dealt with the sheriff's responsibility to administer the county jails, not the sheriff's law enforcement responsibilities. Further, in *Thompson,* this court simply assumed that the sheriff was "the county official that state law indicates is the official policymaker regarding arrestee detention in County Jail." *Id.* at 1444. Whether the sheriff was acting for the state or the county in administering the county jails was not in dispute in *Thompson.*

Importantly, "[u]nder California law, monetary damages for section 1983 claims are paid by the County and not the state." *Id.* at 562 (citing Cal. Gov.Code § 815.2). This "crucial factor" weighed "heavily" toward our conclusion that the sheriff functioned for the county, rather than the state, when managing the local jails. *Id.* The Supreme Court explained in *McMillian* that it was "critical" for the case and "strong evidence in favor of the ... conclusion that sheriffs act on behalf of the State" that a judgment against an Alabama sheriff would be a suit against the State, and that the county would not be liable for a sheriff's acts under *respondeat superior.* 520 U.S. at 789, 117 S.Ct. 1734; *see also Streit,* 236 F.3d at 562. Here, however, California law places liability on the county. Cal. Gov.Code § 815.2; *Streit,* 236 F.3d at 562.

Further, California Government Code section 25303 grants the county boards of supervisors broad fiscal and administrative powers for the management of county jails. *Streit,* 236 F.3d at 561. Under California Government Code section 23013, the counties also "retain the power to transfer control of a county jail from the sheriff to a county-created department of corrections." *Id.* The California Code also provides that California sheriffs are elected county officers. *Id.* at 562 (citing Cal. Gov.Code § 24000(b); Cal. Elec.Code § 314). Sheriffs are required to maintain their offices at the county seat with other county officers. *Id.* (citing Cal. Gov.Code § 24250). Sheriff vacancies are filled in the same manner as other elective county officers. *Id.* (citing Cal. Gov.Code § 24205). The services of the sheriff may be contracted out by the county—not the state. *Id.* (citing Cal. Gov.Code § 53069.8). We found that "[t]hese various state provisions lead inexorably to the conclusion that the [sheriff] is tied to the County in its political, administrative, and fiscal capacities." *Id.*

Finally, we examined California case law and concluded that the relevant cases further supported our holding that the county was liable for the sheriff's actions. *Id.* at 562–63 (discussing *Sullivan v. County of Los Angeles,* 527 P.2d 865, 868–69 (Cal. 1974) (holding that the county was liable for the sheriff's failure to release a prisoner who had completed a sentence), and *Beck v. County of Santa Clara,* 204 Cal. App.3d 789, 251 Cal.Rptr. 444 (1988) (holding that control over the local prisons is within the authority of the individual counties)). We rejected the county's reliance on *County of Los Angeles v. Superior Court (Peters),* 68 Cal.App.4th 1166, 80 Cal. Rptr.2d 860 (1998), in which the California Court of Appeal held that the Los Angeles Sheriff's Department was a state actor and therefore immune from section 1983 liability. We noted that the cases presented distinct factual scenarios. *Streit,* 236 F.3d at 564. Moreover, we explained that we were not bound by the conclusion of the California Court of Appeal in *Peters,* because the question regarding section 1983 liability ultimately implicated federal, not state, law. *Id.* Our examination of "the precise function at issue in conjunction with the state constitution, codes, and case law" led us to "conclude that the [sheriff] acts as the final policymaker for the county when administering the County's release policy." *Id.* at 564–65, 80 Cal. Rptr.2d 860.

C.

█ It requires little extension of *Streit* for us to conclude that the Shasta County Sheriff acts for the County, not the state, when investigating crime in the county. As we explained in *Streit,* the California Constitution clearly identifies the sheriff as a county officer. *Streit,* 236 F.3d at 561 (citing Cal. Const. art. XI, § 1(b)). That

designation is not limited to the sheriff's function of managing the county jails. Moreover, as in *Streit,* nothing in California's constitution provides that the sheriff acts for the state instead of the county when investigating crime.

The same statutory provisions identified in *Streit* to "lead inexorably to the conclusion that the [sheriff] is tied to the County in its political, administrative, and fiscal capacities," *Streit,* 236 F.3d at 562, apply equally to sheriffs investigating crime. As *Streit* explained, the fact that "monetary damages for section 1983 claims are paid by the County and not the state ... weighs heavily" in favor of concluding that the sheriff acts for the county. *Id.* (citing Cal. Gov.Code § 815.2). California Government Code section 815.2 is not limited to the sheriff's jail administration function. Amicus California State Association of Counties argues that because the county's obligation to indemnify and defend sheriffs is required by *state* statute for all local employees, the payment obligation does not indicate that the sheriff acts for the county. Yet the fact that the state legislature has determined that *all* county officials are to be indemnified by the county government—including the sheriff and the sheriff's department employees, and without exception for their crime investigation functions—indicates that the sheriff is considered a county actor.

Further, unlike in *McMillian,* where Alabama sheriffs were required to attend all courts in the state, California sheriffs are required to attend only those courts within their respective counties. Cal Gov. Code § 26603. We also note that unlike in *McMillian,* in which the Alabama Constitution made a county sheriff subject to impeachment on the authority of the Alabama Supreme Court, not the county, 520 U.S. at 788, 117 S.Ct. 1734, impeachment proceedings against a California county sheriff, as with other county officials, are initiated by a county grand jury, and the sheriff is not included among those officials identified in the California Constitution as subject to impeachment by the state Legislature. *See* Cal. Const. art. IV, § 18; Cal. Gov.Code § 3060; *People v. Hulburt,* 75 Cal.App.3d 404, 142 Cal.Rptr. 190, 193 (1977). While this factor may be of somewhat limited weight because a state court appoints the prosecutor to conduct the impeachment proceedings, *see Weiner,* 210 F.3d at 1030, it nonetheless weighs toward the conclusion that the sheriff acts for the county when investigating crime as well as when administering the jails. Finally, as we noted in *Streit,* California Government Code section 25303 grants the county board of supervisors supervisory authority over all county officers, including sheriffs, and places a duty on the board of supervisors to "see that [county officers] faithfully perform their duties." Cal. Gov.Code § 25303; *see also Dibb v. County of San Diego,* 884 P.2d 1003, 1009 (in bank) (holding that "under section 25303, the board of supervisors has a statutory duty to supervise the conduct of all county officers").

Only one provision of the California Constitution offers support for the County's position. Article V, section 13, of the California Constitution, places California sheriffs under the "direct supervision" of the Attorney General. Cal. Const. art. V, § 13.[3] Article V, section 13, is given shape

---

**3.** Cal. Const. Art. V, § 13, provides in part:

Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and

in several statutory provisions that give the Attorney General specific supervisory powers over sheriffs. *See* Cal. Gov.Code § 12560 (giving the Attorney General the power to require written reports concerning the investigation, detection, and punishment of crime in the county); Cal. Gov. Code § 12561 (giving the Attorney General the power to appoint persons to perform the duties of sheriffs with respect to the investigation of a particular crime); Cal. Gov.Code § 12524 (giving the Attorney General the power to call a conference of district attorneys, sheriffs, and police chiefs for the purpose of furthering "uniform and adequate enforcement" of state law). Further, California law limits the general supervisory authority of the county board of supervisors over the sheriff by providing that the board of supervisors "shall not obstruct the investigative function of the sheriff." Cal. Gov.Code § 25303. The County argues that because the sheriff is subject to supervision by the Attorney General, the sheriff acts as a state, not a county, official when investigating crime.

▪ As the district court for the Northern District of California astutely observed in *Roe v. County of Lake,* 107 F.Supp.2d 1146 (N.D.Cal.2000), such reliance on Article V, section 13, "would prove too much, as the California Constitution permits the Attorney General to supervise all 'other law enforcement officers as may be designated by law.'" *Id.* at 1150–51 (quoting Cal. Const. art. V, § 13). On its face, Article V, section 13, applies to *all* law enforcement officers in California. The California Supreme Court has explained that the purpose of Article V, section 13, "was to ease the difficulty of solving crimes, and arresting responsible crimi-

nals, by coordinating county law enforcement agencies and providing the necessary supervision by the Attorney General over them." *Pitts v. County of Kern,* 17 Cal.4th 340, 70 Cal.Rptr.2d 823, 949 P.2d 920, 931 n. 4 (1998). Article V, section 13 thus is a tool that aids the Attorney General in carrying out his duty "to see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. V, § 13. Such general law enforcement authority "does not contemplate absolute control and direction" of the officials subject to the Attorney General's supervision. *People v. Brophy,* 120 P.2d 946, 953 (Cal. Ct.App.1942). On the contrary, sheriffs retain significant autonomy as the officials responsible for investigating crime within their respective counties. *See id.* Moreover, as recently as 1978, the California Constitution was amended to expressly require each county to have "an elected county sheriff." Cal. Const. art. XI, § 1. This history stands in sharp contrast to Alabama's history, found "especially important" in *McMillian,* of amending its constitution to place its sheriffs within the state executive department. *See* 520 U.S. at 787, 117 S.Ct. 1734.

▪ The County also argues that because California Government Code section 25303 prohibits a county board of supervisors from obstructing the investigative function of the sheriff, the statute demonstrates that the sheriff is a state, not a county, actor when investigating crime. *See* Cal. Gov.Code § 25303 ("The board of supervisors shall not obstruct the investigative function of the sheriff of the county ...."). We disagree. On its face, the limitation in section 25303 appears to be directed at preserving the independence of the sheriff from political pressure. *See id.*

may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime

in their respective jurisdictions as to the Attorney General may seem advisable....

("This section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county."). The provision thus is akin to a separation of powers provision, and as such has no obvious bearing on whether the sheriff should be understood to act for the state or the county when investigating crime within his county. Merely because a county official exercises certain functions independently of other political entities within the county does not mean that he does not act *for* the county.

Moreover, although the county board of supervisors may not *obstruct* the sheriff's investigative function, it does not follow that the county has no interest in how the sheriff performs his investigative duties. In *Dibb*, the California Supreme Court held that under California Government Code section 25303, a county board of supervisors "has a statutory duty to supervise the conduct of all county officers," including county sheriffs, and that under California Government Code section 31000.1, the board of supervisors was authorized to establish a citizen review board to review and report on the conduct of the sheriff's department. *Dibb*, 884 P.2d at 1009. Although section 25303 prohibits the board from *obstructing* the sheriff's investigation of crime, the board nonetheless maintains a substantial interest in the performance of the sheriff's department, including the conduct of its officers when investigating crime.[4] *Id.*

We recognize that in *Weiner*, this court found Article V, section 13, of the California Constitution and the limitation on the board of supervisor's authority in California Government Code section 25303, as applied to California district attorneys, to weigh in favor of the conclusion that district attorneys act for the State when deciding to prosecute a case. 210 F.3d at 1030; *accord Pitts*, 70 Cal.Rptr.2d at 834, 949 P.2d 920. However, Article V, section 13, establishes a closer relationship between the Attorney General and district attorneys than between the Attorney General and county sheriffs. Under Article V, section 13, "whenever 'in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute,' in which cases 'he shall have all the powers of a district attorney.'" *Brophy*, 120 P.2d at 953 (quoting Cal. Const. art. V, § 13). No similar provision permits the Attorney General to assume the powers of a sheriff. Similarly, the *Weiner* court found the limitation in section 25303 to support the conclusion that district attorneys act for the state when deciding to prosecute crime only by reading section 25303 in conjunction with California Government Code section 12550, which, like Article V, section 13, of the California Constitution, provides that the Attorney General may assist the district attorney or even take full charge of any investigation or prosecution, in which case the Attorney General would have all the powers of a district attorney. *See Weiner*, 210 F.3d at 1029–30. There is no analo-

---

4. By way of illustration, the court explained: Review of citizen complaints and peace officer-related deaths might suggest the need for new or different types of training for personnel ... which the board of supervisors would have to fund. Politically the board of supervisors might be concerned about public distrust of investigations conducted by either the sheriff or district attorney and hopeful that investigations by a group not aligned with law enforcement would restore public confidence, particularly if that group reached conclusions consistent with the sheriff and district attorney. *Dibb*, 36 Cal.Rptr.2d 55, 884 P.2d at 1008 (internal quotations and alterations omitted).

gous provision with respect to a sheriff's investigative function that would permit the Attorney General to assume the powers and responsibilities of the sheriff. *Compare* Cal. Gov.Code § 12560. Indeed, California courts have recognized that Article V, section 13, generally does not permit county officials to "avoid or evade the duties and responsibilities of their respective offices by permitting a substitution of judgment." *Brophy,* 120 P.2d at 953. The only recognized exception is that which provides for the Attorney General's assumption of the district attorney's duties. *Id.*

■ The County also argues that because California law imposes on sheriffs the duty to "preserve peace," Cal. Gov. Code § 26600; arrest "all persons who attempt to commit or who have committed a public offense," Cal. Gov.Code § 26601; and "prevent and suppress any affrays, breaches of the peace, riots, and insurrections ..., and investigate public offenses which have been committed," Cal. Gov. Code § 26602, the sheriff is a state actor when investigating crime. In *McMillian,* it was important to the Court's analysis that Alabama sheriffs were given "complete authority to enforce the state criminal law in their counties" while the county boards of supervisors had no authority regarding law enforcement. 520 U.S. at 790, 117 S.Ct. 1734. Unlike in Alabama, however, in California, county boards of supervisors have authority to supervise the conduct of sheriffs, including their law enforcement conduct, subject to the limitation that the board not obstruct the sheriff's investigation of crime. *See Dibb,* 884 P.2d at 1008.

■ Additionally, we are satisfied that California case law supports our conclusion that California sheriffs are county actors when investigating crime. We have found no California case holding that sheriffs are state actors when investigating crime. Indeed, as we noted in *Streit,* our own court has long assumed that sheriffs act on behalf of the county, even when investigating crime. *See* 236 F.3d at 564. We are not bound by the determination of the California Court of Appeal in *Peters* that California sheriffs are state actors. *See id.* Questions regarding section 1983 liability implicate federal, not state, law, and the sheriff's investigative function was not at issue in *Peters. Id.* Further, as we explained above, California counties maintain a significant interest in supervising the sheriff's performance of his investigative function, and there are significant differences in the law governing district attorneys and the law governing sheriffs.

California courts have noted that only the sheriff can control how he spends the funds allotted to him in the county budget, and that the county cannot withhold the funds necessary for the sheriff to carry out his duties. *See Brandt v. Madera County Bd. of Supervisors,* 84 Cal.App.3d 598, 147 Cal.Rptr. 468, 471 (1978); *Hicks v. Orange County Bd. of Supervisors,* 69 Cal.App.3d 228, 138 Cal.Rptr. 101, 108 (1977). In *McMillian,* the Supreme Court placed little weight on the source of the sheriff's funding because control over the sheriff's budget permitted the county only an "attenuated and indirect influence" over the sheriff. 520 U.S. at 791–92, 117 S.Ct. 1734. Unlike in *McMillian,* however, the county also sets the sheriff's salary in California, thus permitting the board of supervisors to exercise a somewhat more direct influence over the sheriff. *See* Cal. Gov. Code § 25300; *compare McMillian,* 520 U.S. at 791, 117 S.Ct. 1734 (noting that the Alabama sheriff's salary is set by the state legislature, not the local governing body). While the county's similar authority to set the district attorney's salary "does not translate into control over him," *Weiner,* 210 F.3d at 1030 (quoting *Pitts,* 70 Cal.

Rptr.2d 823, 949 P.2d at 937(internal quotation marks omitted)), it provides one more factor weighing in favor of the conclusion demonstrating that the sheriff is a county actor when investigating crime.

## CONCLUSION

In sum, we conclude that the Shasta County Sheriff acts as a final policymaker for the County when investigating crime within the County. We therefore affirm the district court's holding that the County may be subject to liability under 42 U.S.C. § 1983.

AFFIRMED.