Moreno Avalos CORTEZ; Mauricio Robert Avalos; Terry Leach; Lydia Avalos; Guillermo Avalos; Kathy Granillo, Plaintiffs–Appellees,

v.

COUNTY OF LOS ANGELES, Defendant–Appellant.

No. 00–56781.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Filed June 27, 2002.

David J. Wilson (argued) and Julie Fleming, Manning & Marder, Kass, Ellrod, Ramirez, Los Angeles, California, for the defendant-appellant.

Barry S. Zelner (argued) and Charles L. Fonarow, Zelner & Karpel, Beverly Hills, California, for the plaintiffs-appellees.

Before FERGUSON, T.G. NELSON and W. FLETCHER, Circuit Judges.

**OPINION**

FERGUSON, Circuit Judge:

The issue in this case is whether the actions of a California sheriff are attributable to the county for purposes of 42

U.S.C. § 1983. Since *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), we have had several occasions to address this question and have invariably answered it in the affirmative. Consistent with *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir.2001), we hold that the Los Angeles County Sheriff ("Sheriff") acts as the final policymaker for the County of Los Angeles ("County") in establishing and implementing policies and procedures for the safekeeping of inmates in the county jail. Accordingly, we affirm the District Court's denial of the County's motion to dismiss and hold that the County is subject to § 1983 liability as a "person" acting under color of state law.

**I. BACKGROUND**

On July 25, 1999, Mauricio Avalos ("Avalos") was beaten to death by five of his cell mates while incarcerated in the Los Angeles County Jail. Avalos was originally assigned to a cell in the general population awaiting trial for armed robbery. However, he was subsequently transferred to a special gang unit when prison officials learned that he had a tattoo associated with a particular gang.

Although Avalos had previously associated with members of a gang, he disavowed any relationship with the gang prior to his incarceration. Upon being transferred to the gang unit, Avalos immediately became a target of threats and assaults by other inmates. According to the complaint, both Avalos and his family notified jail officials that he feared an attack and requested a transfer to another jail cell.[1] However, Avalos remained in the gang unit where he

---

1. The County now disputes this allegation. However, on review of the County's motion to dismiss, we accept as true the facts alleged in Appellees' complaint. *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1154 (9th Cir.

2000) (per curiam). Moreover, it is an undisputed fact that jail officials placed Avalos in the gang unit where he was subsequently attacked and beaten by his cell mates.

was subsequently attacked and beaten by his cell mates on July 25, 1999. Avalos died as a result of the injuries he sustained from the attack.

On May 4, 2000, Avalos' heirs ("Appellees") commenced this action against the County in the Superior Court of the State of California. Appellees allege, among other claims, that the Sheriff deprived Avalos of his constitutional rights guaranteed under the First, Fourth, and Fourteenth Amendments in violation of § 1983 by failing to provide a safe jail cell for him and by placing him in close proximity to gang members who threatened and ultimately took his life.

On August 7, 2000, the County removed the action to the United States District Court for the Central District of California. The County then moved for dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that it was not liable for the Sheriff's actions because the Sheriff was acting on behalf of the State in setting policies for the operation of the county jails. As a state actor, the County argued, the Sheriff was immune from § 1983 liability under the Eleventh Amendment.

The District Court denied the County's motion to dismiss. The Court found that the Sheriff was acting on behalf of the County in placing Avalos in the gang unit of the jail because the decision was made pursuant to the Sheriff's function as manager of the county jail. The Court reasoned that the Sheriff is a county officer under state law, and that the State does not oversee his management of the county jail. Thus, the Sheriff was acting on behalf of the county in implementing procedures for the keeping of prisoners and the operation of the jail. The Court concluded that the County could be held liable for the Sheriff's actions under § 1983 because he was acting as the county's final policymaker in deciding where in the jail to keep

Avalos. This timely interlocutory appeal followed.

## II. DISCUSSION

■ We have jurisdiction to entertain the County's interlocutory appeal from the District Court's denial of its motion to dismiss on the basis of immunity. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). We review de novo the District Court's refusal to grant the County immunity from this § 1983 action. *Morley v. Walker,* 175 F.3d 756, 759 (9th Cir.1999).

### A. Municipal Liability under § 1983

■ Section 1983 provides a method by which individuals can sue for violations of their federal rights. One of the requisite elements for stating a claim under § 1983 is that the violation was committed by a "person" acting under color of state law. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). A municipality or other local government entity is deemed such a "person" and may be sued for constitutional torts committed by its officials according to an official policy, practice, or custom. *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In contrast, a state and its officials sued in their official capacity are not considered "persons" within the meaning of § 1983, due to the sovereign immunity generally afforded states by the Eleventh Amendment. *Will,* 491 U.S. at 70–71, 109 S.Ct. 2304. Consequently, whether Appellees can maintain a § 1983 claim against the County depends on whether the Sheriff was a state or county actor in administering the county jail.

### B. Final Policymaker Inquiry under McMillian

■ The County is liable only for the actions of "its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. "To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of the particular act." *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000) (quoting *McMillian*, 520 U.S. at 785, 117 S.Ct. 1734). In this case, the County does not dispute that the Sheriff had final policymaking authority to decide where in the jail to keep Avalos. However, the County argues that the Sheriff was acting as the final policymaker for the State, rather than the County, in making this decision.

To determine whether the Sheriff was acting as the final policymaker for the County, we follow the analytical framework set forth in *McMillian*. In *McMillian*, the Supreme Court set forth two principles to guide our inquiry. 520 U.S. at 785–86, 117 S.Ct. 1734. First, we must identify the particular area or issue for which the official is alleged to be the final policymaker. *Id.* at 785, 117 S.Ct. 1734. Second, while the determination of § 1983 liability is governed by federal law, we analyze state law to discern the official's actual function with respect to that particular area or issue. *Id.* at 786, 117 S.Ct. 1734. By reviewing state law, we seek to ascertain to what degree the municipality has control over the official's performance of the particular function and, thus, whether the municipality can be held liable for the official's actions. *See id.* at 790–91, 117 S.Ct. 1734.

In *McMillian*, the Supreme Court reviewed Alabama's Constitution, codes, and caselaw, and concluded that the weight of the state law demonstrated sheriffs were final policymakers for the State in their law enforcement capacity. *Id.* at 793, 117 S.Ct. 1734. The Court found persuasive Alabama's constitutional designation of sheriffs as executive officers of the State. *Id.* at 787–89, 117 S.Ct. 1734. In addition, the Court found it significant that tort claims against sheriffs constituted claims against the State, not the county. *Id.* at 787–88, 117 S.Ct. 1734. Most importantly, it found that counties had no direct control over how sheriffs fulfilled their law enforcement duties. *Id.* at 790, 117 S.Ct. 1734. In reaching its holding that Alabama sheriffs were state actors in performing their law enforcement functions, the Court cautioned that the inquiry could yield different results in other states, depending on the role of sheriffs and the importance of county governments under the particular state's law. *Id.* at 795, 117 S.Ct. 1734.

## C. County's Liability for the Sheriff's Decision to Segregate Avalos

■ The District Court ruled below that the Sheriff acted on behalf of the County in establishing and implementing security procedures for the county jail. We agree and hold that the County is subject to § 1983 liability for the Sheriff's actions taken here pursuant to his role as administrator of the county jail.

We have had several occasions to apply *McMillian* to California sheriffs. While we must conduct an independent examination of California's Constitution, codes, and caselaw with respect to each "particular area" or each "particular issue," our circuit caselaw "provides the starting point for our own analysis." *Brewster v. Shasta County*, 275 F.3d 803, 806 (9th Cir.2001). In this case, not only does our precedent provide a starting point, it also resolves the question at bar because we have previously held that a sheriff acts on behalf of

the county when serving in his administrative capacity. *Streit*, 236 F.3d at 562.

In *Streit*, we applied *McMillian* to California sheriffs for the first time and held that the Los Angeles Sheriff's Department acts as the final policymaker for the county in administering the county's jail-release policy. *Id.* at 564–65. Our review of California's constitution, codes, and case-law revealed that the sheriff acts on behalf of the county in "the oversight and management of the local jail." *Id.* at 561.

In reaching our conclusion, we found particularly salient California's constitutional designation of sheriffs as county officers. *Id.* at 561 (interpreting Cal. Const. art. XI, § 1(b)). Further, statutory provisions grant counties the "ultimate power over the jail," including the power to transfer control of the facilities from the sheriff to a county-created department. *Id.* at 561 (citing Cal. Gov't Code §§ 23013, 25303). Critically, the county, not the State, must indemnify sheriffs for any monetary judgments against them. *Id.* at 562 (citing Cal. Gov't Code § 815.2). State law thus demonstrated that "the County, not the state, oversees the local jails, and the [Sheriff], as the administrator of those jails, acts for the County." *Id.* at 562.

As in *Streit*, the Sheriff's actions here were taken in his capacity as the administrator of the jail. Sheriffs are given broad statutory authority to manage county jails under California law. Government Code section 26605 provides that the "sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it." Cal. Gov't Code § 26605; *accord* Cal. Pen.Code § 4000 (providing that the county sheriff operates the county jail). As administrator of the jail, the Sheriff is responsible for developing and implementing policies pertaining to inmate housing. Cal.Code Regs. tit. 15, § 1050. Part of this task entails the establishment of policies and procedures for the segregation of inmates who either pose a danger or are a target for assault, as is necessary "to obtain the objective of protecting the welfare of inmates and staff." Cal.Code Regs. tit. 15, § 1053; *see also id.* § 1006 (defining goal of administrative segregation as providing "that level of control and security necessary for good management and the protection of staff and inmates").

Here, the Sheriff's decision to place Avalos in the gang unit was made pursuant to his policy of segregating gang members from other inmates. Appellees allege that the Sheriff should not have applied this policy to him as a former gang member. In addition, Appellees allege that the Sheriff should have transferred him out of the gang unit once jail officials became aware that he was at risk of attack. The circumstances surrounding Avalos' transfer to the gang unit and the reasons why he remained there in the face of danger are unclear. What is clear, however, is that the actions of the jail officials were guided, or at least governed, by the Sheriff's policy of segregating gang members. Because this policy was established and implemented by the Sheriff as the jail administrator, he was acting on behalf of the County in placing Avalos in the gang unit of the jail. Therefore, the County is now subject to § 1983 liability for his actions.

The County argues that the Sheriff was a state actor in failing to protect Avalos from attack because his actions were taken in his law enforcement capacity to keep the peace. Specifically, the County argues that the Sheriff's actions were taken pursuant to his duty to "prevent and suppress any affrays, breaches of the peace, riots, and insurrections which come to his knowledge." Cal. Gov't Code § 26602. We do not agree.

■ As discussed above, the Sheriff established his policy of segregating gang-

affiliated inmates from the general jail population pursuant to his authority as jail administrator. Just as public school administrators may be held accountable for violence and harassment occurring on school grounds, so too are sheriffs responsible to prevent and quell violence in the jail, not as law enforcement officials, but as administrators wielding control over persons entrusted to their custody. *Cf. Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 646, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (holding that public school administrators may be liable for student-on-student sexual harassment because a public school is the custodian of its students, "permitting a degree of supervision and control").

Nevertheless, even if we were to accept the County's characterization of the Sheriff's actions as a failure to keep the peace, we would still find that the Sheriff was acting on its behalf. From the outset, we reject the County's assertion that the outcome of this appeal is controlled by *County of Los Angeles v. Superior Court* (*Peters*), 68 Cal.App.4th 1166, 80 Cal.Rptr.2d 860 (Ct.App.1998), in which a California appellate court held that sheriffs are state actors in their law enforcement function of establishing jail-release policies for the county jail.[2] *Brewster*, 275 F.3d at 811 ("We are not bound by the determination of the California Court of Appeal in *Peters* that sheriffs are state actors. Questions regarding section 1983 liability implicate federal, not state, law . . . .") (citing *Streit*, 236 F.3d at 564).

Moreover, to the extent that *Peters* stands for the proposition that sheriffs are state actors in their law enforcement capacity, it is contrary to our caselaw. Two of our recent decisions demonstrate that California sheriffs act on behalf of the county in performing at least some of their law enforcement functions. *See Bishop Paiute Tribe v. County of Inyo*, 275 F.3d 893, 910 (9th Cir.), *amended on denial of reh'g and reh'g en banc*, (9th Cir. May 20, 2002); *Brewster*, 275 F.3d at 807–08. In *Brewster*, we held that California sheriffs are county actors when investigating crime in the county. 275 F.3d at 807–08. More recently, in *Bishop Paiute Tribe*, we held that a sheriff is a county officer "when obtaining and executing a search warrant." 275 F.3d at 910.

In both *Bishop Paiute Tribe* and *Brewster*, we reasoned that sheriffs answer to the county for their conduct, even in their law enforcement capacities. *Bishop Paiute Tribe*, 275 F.3d at 907, 910; *Brewster*, 275 F.3d at 810. The county board of supervisors is charged with the responsibility of ensuring the sheriff's faithful performance of his duties. *Brewster*, 275 F.3d at 808 (citing Cal. Gov't Code § 25303 and *Dibb v. County of San Diego*, 8 Cal.4th 1200, 36 Cal.Rptr.2d 55, 884 P.2d 1003, 1009 (1994)). That the Attorney General has authority to supervise state law enforcement officers does not transform sheriffs into state actors because, taken to its logical extreme, this provision would immunize all law enforcement agencies in the State and "thereby render[ ]

---

**2.** The County also relies on *Pitts v. County of Kern*, 17 Cal.4th 340, 70 Cal.Rptr.2d 823, 949 P.2d 920 (1998). In *Pitts*, the California Supreme Court held that California district attorneys are state actors when training personnel, as well as developing policy, for the prosecution of state law offenses. 70 Cal. Rptr.2d 823, 949 P.2d at 937.

In *Streit*, we rejected the county's reliance on *Pitts*, explaining that, "[a]lthough *Pitts* pro-

vides some insight into California's application of *McMillian*, we note that the differences between the duties and activities of district attorneys and sheriffs are too great to allow *Pitts* to influence our decision in the cases on appeal, especially in light of the requisite case-by-case analysis demanded by *McMillian*." *Streit*, 236 F.3d at 564 n. 13.

meaningless the decision in *Monell*, which preserves § 1983 actions against local governments." *Bishop Paiute Tribe*, 275 F.3d at 908 (interpreting Cal. Const. art. V, § 13); *Brewster*, 275 F.3d at 808–09.

The County cites *Streit* as support for its argument that sheriffs act on behalf of the State in performing their law enforcement duties. This miscalculates the scope of *Streit's* holding. In *Streit*, we stated that, "the[Sheriff] acts as the final policymaker for the county when administering the County's release policy and not in [his] state law enforcement capacity." *Id.* at 564–65. However, as we noted in *Brewster*, the issue of whether a sheriff acts as the final policymaker for the county in his law enforcement capacity was not before us in *Streit*. 275 F.3d at 806 n. 1. Thus, it remained an open question until *Brewster* and *Bishop Paiute Tribe*. Following these decisions, it is no longer tenable to assert that a sheriff is always a state actor in his law enforcement capacity. Consequently, the County's argument fails.

*Brewster* and *Bishop Paiute Tribe* demonstrate that California sheriffs are final policymakers for the county not only when managing the local jail, but also when performing some law enforcement functions. Therefore, even if we characterized the Sheriff's actions as taken in his law enforcement capacity to keep the peace, we could conclude that the County is subject to § 1983 liability for his actions. However, as previously discussed, we find that the Sheriff was acting in his administrative capacity, rather than as a law enforcement officer. Specifically, we find that the Sheriff's actions were taken pursuant to his policy of segregating inmates identified as gang members, which he established pursuant to his authority as the administrator of the county jail and custodian of the inmates within it. Accordingly, the County can be held liable for his decision to keep Avalos in the gang unit of the jail.

### III. CONCLUSION

Because the Sheriff was acting on behalf of the County when he decided to keep Avalos in the gang unit of the jail, the County is subject to § 1983 liability for the Sheriff's actions. Thus, the District Court's denial of the County's motion to dismiss is **AFFIRMED.**