[No. E033882. Fourth Dist., Div. Two. Apr. 20, 2004.]

PEDRO HERNANDEZ, Plaintiff and Appellant, v.
COUNTY OF SAN BERNARDINO, Defendant and Respondent.

COUNSEL

Fitzpatrick, Spini & Swanston and Charles Swanston for Plaintiff and Appellant.

Ronald D. Reitz, County Counsel, and Alan L. Green, Deputy County Counsel, for Defendant and Respondent.

**O**PINION

**GAUT, J.—**

### 1. Introduction

How far does the immunity from a suit for damages accorded under the Eleventh Amendment extend to a county acting as an arm of the state? In the present case, Pedro Hernandez, a resident of Monterey County, suffered wage garnishments and a levy upon his savings account because the Family Support Division (Family Support) of the Office of San Bernardino County's District Attorney confused Hernandez with another person owing child support payments. In his third amended complaint against the County of San Bernardino (the County), Hernandez sued the County for violation of his civil rights under title 42, section 1983 of the United States Code (section 1983). Hernandez appeals from an order granting the County's motion for judgment on the pleadings.

We hold the court erred in granting a motion for judgment on the pleadings. At this stage in the proceedings, the complaint on its face and the undeveloped factual record did not permit the trial court to rule, as a matter of law, that Family Support was a state actor, making the County free from liability under section 1983. Nor could the trial court properly decide whether Family Support was a policymaker for the County, making the County liable under section 1983.[1] In the absence of any evidence that the procedures followed by Family Support were state mandated or county initiated, the trial court acted precipitously in ruling in favor of the County. We reverse and remand for further proceedings.

### 2. Factual and Procedural Background

■ Although Hernandez has submitted a lengthy recitation of the factual background of this case, he has not provided us with supporting citations to the record as required by California Rules of Court, rule 14(a)(1)(C). Furthermore, our review of a motion for judgment on the pleadings, like a demurrer, is confined to consideration of all facts properly pleaded in the complaint,[2] not the extraneous matters introduced by Hernandez in his points and authorities below and his appellant's opening brief.

---

[1] *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 352–353 [70 Cal.Rptr.2d 823, 949 P.2d 920].

[2] *Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1379 [259 Cal.Rptr. 918]; *Pang v. Beverly Hosp.* (2000) 79 Cal.App.4th 986, 989 [94 Cal.Rptr.2d 643].

Nevertheless, for purposes of review, Hernandez requests we consider the additional facts are either established or capable of being pleaded by amendment of the complaint. What apparently happened, according to Hernandez and not disputed by the County, is that Family Support confused Hernandez's name, birthdate, and Social Security number with another man who owed delinquent child support, the so-called support obligor. Family Support then reported Hernandez to the state Franchise Tax Board for being delinquent in child support. After learning its mistake, Family Support each time neglected to delete Hernandez's information from its accounting database or to make telephone contact with the Franchise Tax Board so it could flag the problem in its system. Instead, Family Support repeatedly sent delinquency reports to the Franchise Tax Board for collection. During the period between August 1999 and June 2000, the Franchise Tax Board acted four times to garnish Hernandez's wages and levy on his bank account. As a result, Hernandez suffered economic and personal distress, including his wife leaving him for a period of time.

### 3. Discussion

██ Hernandez has asserted one claim for civil rights violations against the County based on Family Support's conduct. In *Monell v. Dept. of Soc. Serv. of City of N.Y. (Monell)*,[3] the United States Supreme Court announced that a local government like a county, and unlike state government, is "a person" subject to a suit for damages under section 1983. If Family Support was acting for the state in its collection procedures, the County could not be liable under section 1983. But, if Family Support was acting on behalf of the County, the County could be liable.[4] Therefore, we must consider whether Family Support was a state or county actor under the particular facts of this case.

California law governs the provision for and enforcement of child support. In return for receiving federal funding for public assistance under title IV-D of the Social Security Act, a state must "provide services related to the establishment, modification, and enforcement of child support obligations."[5] In the present case, the applicable law is former Welfare and Institutions Code section 11200 et seq., the Family Economic Security Act of 1982.[6]

---

[3] *Monell v. Dept. of Soc. Serv. of City of N.Y.* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 98 S.Ct. 2018].

[4] *Pitts v. County of Kern, supra,* 17 Cal.4th at pages 344–345.

[5] *County of Lake v. Palla* (2001) 94 Cal.App.4th 418, 422 [114 Cal.Rptr.2d 277], citing title 42 United States Code section 654(4)(A).

[6] Except where otherwise stated, all statutory references are to the former provisions of the Welfare and Institutions Code. (Stats. 1982, ch. 1329.)

More particularly, we are concerned with the application of former article 7, section 11475 et seq., governing enforcement of child support obligations.

Most of article 7 was repealed and superseded by Family Code section 17500 et seq., effective September 28, 2000, and July 30, 2001: "In 1999, the Legislature enacted a new statutory scheme that created a Department of Child Support Services within the California Health and Human Services Agency, to establish, collect, and distribute child support. [Citations.] The pertinent Welfare and Institutions Code sections were repealed and replaced . . . ."[7] But the effective dates of the new statutes occurred after June 2000, the last relevant date in this case. Therefore, we will employ the former law for our analysis because " '[a]s a general rule, an appeal only determines whether the judgment was correctly rendered based on . . . the law as it existed at that time.' "[8]

Article 7 designated the state Department of Social Services (DSS) as "the single organizational unit whose duty it shall be to administer the state plan for securing child . . . support . . . . State plan functions shall be performed by other agencies as required by law, by delegation of the department, or by cooperative agreements."[9] Next, the director of DSS was required to "formulate, adopt, amend or repeal, in accordance with provisions of Section 10554, regulations and general policies affecting the purposes, responsibilities, and jurisdiction of the department and which are consistent with law and necessary for the administration of the state plan for securing child . . . support orders . . . ."[10] Section 10554 elaborated: "The department shall adopt regulations, orders, or standards of general application to implement, interpret, or make specific the law enforced by the department . . . . [¶] . . . [¶] The rules of the department need not specify or include the detail of forms, reports or records . . . ."

The enforcement provisions also provided each county should maintain in its district attorney's office an enforcement unit with the responsibility for child support obligations.[11] An action by the district attorney for child support was prosecuted in the name of the county.[12] Support enforcement was available to all obligees, whether or not they received public assistance.[13]

---

[7] *County of Lake v. Palla, supra,* 94 Cal.App.4th at page 422, footnote omitted.

[8] *County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1317 [93 Cal.Rptr.2d 524], citing *Broadmoor San Clemente Homeowners Assn. v. Nelson* (1994) 25 Cal.App.4th 1, 4 [30 Cal.Rptr.2d 316].

[9] Sections 10054 and 11475, subdivision (a).

[10] Section 11475, subdivision (b).

[11] Section 11475.1.

[12] Section 11350.1, subdivision (a).

[13] *Worth v. Superior Court* (1989) 2 07 Cal.App.3d 1150, 1154 [255 Cal.Rptr. 304]; *Monterey County v. Cornejo* (1991) 53 Cal.3d 1271, 1281 [283 Cal.Rptr. 405, 812 P.2d 586]

A number of courts interpreted these statutes as providing jurisdiction for a county, through its district attorney, to obtain and enforce child support orders.[14] Under section 11475.1, the County had "standing to sue on behalf of minor children when the children are recipients of aid . . . . The County, via its legal representative the district attorney, is responsible for promptly and effectively enforcing the support obligation . . . by taking 'appropriate action.' . . ."[15] The courts recognized "a strong and manifest policy, obviously adopted for the benefit of the public, to the effect that a county which provides public assistance to a mother and children shall have the right to reimbursement from the primary obligor, the father."[16]

The essential dispute between Hernandez and the County involves whether Family Support was acting on behalf of the state, not the County, when it reported Hernandez to the Franchise Tax Board as being delinquent on child support. Because it cannot be determined conclusively as a matter of law based on the present state of the record that what occurred was state action, we decide the trial court was wrong to grant a motion for judgment on the pleadings. In particular, it is unknown whether the County's procedures for identifying and reporting delinquent support obligors in 1999 and 2000 were mandated by the state or developed independently by the County for implementing child support enforcement. It may be that the County, not the state, had faulty procedures that caused the kind of problem that occurred here. In that event, as discussed below, the County may be liable to Hernandez under section 1983.

In granting the County's motion for judgment on the pleadings, the trial court relied on *Pitts v. County of Kern*,[17] in which the California Supreme Court held that, in prosecuting crimes involving sexual molestation, the district attorney acts for the state and cannot be sued for damages under section 1983. *Pitts* followed the analysis of *McMillian v. Monroe County, Alabama*,[18] in which the United States Supreme Court held that Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties.

---

[14] *In re Marriage of Comer* (1996) 14 Cal.4th 504, 512, footnote 3 [59 Cal.Rptr.2d 155, 927 P.2d 265], citing *Crider v. Superior Court* (1993) 15 Cal.App.4th 227, 230, and footnote 3 [18 Cal.Rptr.2d 757, 18 Cal.Rptr.2d 757]; *County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 438 [75 Cal.Rptr.2d 738, 956 P.2d 1191].

[15] *County of San Diego v. Magri* (1984) 156 Cal.App.3d 641, 647–648 [203 Cal.Rptr. 52], citing section 11475.1.

[16] *In re Marriage of Lugo* (1985) 170 Cal.App.3d 427, 436 [217 Cal.Rptr. 74].

[17] *Pitts v. County of Kern, supra,* 17 Cal.4th at page 345.

[18] *McMillian v. Monroe County, Alabama* (1997) 520 U.S. 781 [138 L.Ed.2d 1, 117 S.Ct. 1734].

About *McMillian*, the *Pitts* court observed that Alabama law classified sheriffs as state officers in several ways and that Alabama sheriffs were authorized to enforce state criminal law in their counties.[19] Contrary factors were that the county paid the sheriff's salary and provided equipment, supplies, lodging, and reimbursement expenses; the sheriff's jurisdiction was limited to the county; and the county voters elected the sheriff.[20] Finally, " '[t]hese characteristics are therefore consistent with an understanding of the 67 Alabama sheriffs as state officials who have been locally placed throughout the State, with an element of control granted to the officials and residents of the county which receives the sheriff's services.' "[21]

Applying *McMillian* to the issue of the liability of the Kern County District Attorney, the *Pitts* court concluded California district attorneys also have " 'complete authority to enforce state criminal law in their counties.' "[22] The state Attorney General, not the county board of supervisors, oversees the county district attorney.[23] Additionally, district attorneys prosecute their cases in the name of the state, not the county, although they may act for the county in other matters.[24] The *Pitts* court also discounted the facts that county voters elect the district attorney, the district attorney must be registered to vote in the county, and the county's board of supervisors sets a district attorney's compensation.[25]

Following *Pitts*, the Second District held in *County of Los Angeles v. Superior Court (Peters)*[26] that, "in establishing policies for the release of persons from a county jail, a sheriff acts as a state official, not a policymaker for the county"[27] and thus, is not liable under section 1983.

This court followed *Monell* and its progeny in *Kirchmann v. Lake Elsinore*,[28] when we held that a school district is immune from liability under section 1983 because it is an instrumentality of the state. In *Kirchmann*,

---

[19] *Pitts v. County of Kern, supra,* 17 Cal.4th at pages 354–355.

[20] *Pitts v. County of Kern, supra,* 17 Cal.4th at page 355.

[21] *Pitts v. County of Kern, supra,* 17 Cal.4th at page 356, quoting *McMillian v. Monroe County, supra,* 520 U.S. at page 792.

[22] *Pitts v. County of Kern, supra,* 17 Cal.4th at page 358, quoting *McMillian v. Monroe County, supra,* 520 U.S. at page 790.

[23] *Pitts v. County of Kern, supra,* 17 Cal.4th at page 359, quoting *McMillian v. Monroe County, supra,* 520 U.S. at page 791.

[24] *Pitts v. County of Kern, supra,* 17 Cal.4th at page 360.

[25] *Pitts v. County of Kern, supra,* 17 Cal.4th at pages 360–361.

[26] *County of Los Angeles v. Superior Court* (1998) 68 Cal.App.4th 1166 [80 Cal.Rptr.2d 860].

[27] *County of Los Angeles v. Superior Court, supra,* 68 Cal.App.4th at page 1174.

[28] *Kirchmann v. Lake Elsinore Unified School District* (2000) 83 Cal.App.4th 1098 [100 Cal.Rptr.2d 289].

however, we acknowledged an important distinction: ". . . California courts have observed that the state's pervasive involvement in school affairs makes its relationship with school districts qualitatively different from its relationship with entities such as cities and counties . . . ."[29]

In contrast, several cases from the Ninth Circuit have found no immunity for counties from section 1983 liability. We consider federal authority because "[t]he availability of immunity from liability under section 1983 in state court is governed by federal, not state, law."[30]

In *Streit v. County of Los Angeles (Streit)*,[31] involving liability of the Los Angeles County Sheriff, the court distinguished *Pitts* and *Peters*. Regarding *Pitts*, the court said: "[T]he differences between the duties and activities of district attorneys and sheriffs are too great to allow *Pitts* to influence our decision in the cases on appeal, especially in light of the requisite case-by-case analysis demanded by *McMillian*."[32] About *Peters*, the court said: "Although the general issue of overdetention was presented in both *Peters* and the cases at hand, the factual scenarios are quite distinct. In *Peters*, the LASD [Los Angeles Sheriff's Department] acted upon a facially-valid warrant in its detention of the plaintiff, where as here, in conducting [Automated Justice Information System] checks, the LASD is conducting its own administrative search for outstanding warrants, wants, or holds upon which it would be required to act, if they existed. Although this distinction may be perceived as subtle, for purposes of our analysis, it is critical. Acting upon a warrant is a law enforcement function with which the LASD is tasked under California state law. [Citation.] Searching for warrants and holds that may or may not have been issued for persons whom the state has no legal right to detain is an administrative function of jail operations for which the LASD answers to the County. [Citations.] Whether or not the policy and practice of detaining persons beyond their term of incarceration for this administrative function violates the Constitution will be a question for the trial court."[33]

A similar outcome was reached in *Cortez v. County of Los Angeles*,[34] in which the court said the Los Angeles County Sheriff acted for the county when "establishing and implementing security procedures for the county jail."[35] The latter was an administrative function with the sheriff's department acting as a county policymaker.[36]

---

[29] *Kirchmann v. Lake Elsinore Unified School District, supra,* 83 Cal.App.4th at page 1114.

[30] *Pitts v. County of Kern, supra,* 17 Cal.4th at page 350.

[31] *Streit v. County of Los Angeles* (2001) 236 F.3d 552.

[32] *Streit v. County of Los Angeles, supra,* 236 F.3d at page 564, footnote 13.

[33] *Streit v. County of Los Angeles, supra,* 236 F.3d at page 564.

[34] *Cortez v. County of Los Angeles* (9th Cir. 2002) 294 F.3d 1186.

[35] *Cortez v. County of Los Angeles, supra,* 294 F.3d at page 1189.

[36] *Cortez v. County of Los Angeles, supra,* 294 F.3d at page 1189.

In *Brewster v. Shasta County*,[37] the Ninth Circuit again rejected *Peters* and held that a deputy sheriff investigating a crime acted for the county, not the state, and exposed the county to liability under section 1983.[38]

Finally, in *Bishop Paiute Tribe v. County of Inyo*,[39] the Ninth Circuit held neither the district attorney nor the sheriff could claim section 1983 immunity for obtaining and executing a search warrant against tribal records as part of the county's welfare fraud investigation. The court distinguished *Pitts* and said the district attorney acted as a county officer because the district attorney was not prosecuting a case but investigating fraud allegations.[40] Similarly, the sheriff acted as a county officer when engaged in the investigation.[41]

■ If a consistent principle can be extracted from these state and federal cases, it is that state interest and involvement must be overt, explicit, and pervasive for apparent county activity to be characterized as state conduct. Here we cannot find that kind of involvement, in part because, as mentioned, the record is not sufficiently developed.

We acknowledge that California law governs child support enforcement both then and now. But we also note that the former law provided: "State plan functions shall be performed by other agencies as required by law, by delegation of the department, or by cooperative agreements."[42] In addition, DSS was responsible for "general policies"[43] and "regulations, orders, or standards of general application to implement, interpret, or make specific the law enforced by the department" but not specific rules or detail about "forms, reports or records."[44] It is reasonable to interpret these statutes as contemplating a system in which child support enforcement would be governed generally by state law. But specific procedures, such as the collection and report of information about support delinquencies, would be left to the particular agency, in this case the County, to develop and implement.

If what occurred in this case was that Family Support was responsible for creating and using its own internal procedures for identifying delinquent support obligors and reporting them to the Franchise Tax Board, Family Support may have acted more like a sheriff performing solely administrative

---

[37] *Brewster v. Shasta County* (9th Cir. 2001) 275 F.3d 803, 807–809.

[38] We recognize that *Brewster* and the *Bishop Paiute* case that follows have been distinguished by the California Supreme Court in *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 [11 Cal.Rptr.3d 690, 87 P.3d 1] for reasons that do not apply here.

[39] *Bishop Paiute Tribe v. County of Inyo* (2002) 291 F.3d 549.

[40] *Bishop Paiute Tribe v. County of Inyo, supra,* 291 F.3d at pages 564–565.

[41] *Bishop Paiute Tribe v. County of Inyo, supra,* 291 F.3d at pages 565–566.

[42] Section 11475, subdivision (a).

[43] Section 11475, subdivision (b).

[44] Section 10554.

functions.[45] The County may not be able to assert immunity from a section 1983 claim. The current posture of the case, however, does not yet permit the trial court or this court to make that determination.

■ Nor is it dispositive that the district attorney has the ability to enforce child support by criminal action. As conceded by the County, the collection efforts made against Hernandez involved civil, not criminal, proceedings. In this instance, Family Support was acting under the auspices of the County's District Attorney's Office. But Family Support, by reporting Hernandez as delinquent to the Franchise Tax Board, was not engaged in the prosecution of crimes or the enforcement of criminal law. Family Support was pursuing civil enforcement of child support obligations. Under *McMillian*, *Pitts*, *Peters*, *Streit*, *Brewster*, *Bishop Paiute*, and *Cortez*, the County was not yet entitled, as a matter of law at this preliminary stage in the case, to a determination of immunity from a claim for damages under section 1983.

## 4. Disposition

We reverse the judgment on the pleadings in favor of the County and remand for further proceedings. As the prevailing party, Hernandez recovers his costs on appeal.

McKinster, Acting P. J., and King, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 11, 2004.

---

[45] *Streit v. County of Los Angeles, supra,* 236 F.3d at page 564; *Cortez v. County of Los Angeles, supra,* 294 F.3d at page 1189.