[No. B183930. Second Dist., Div. Two. July 11, 2006.]

DEON BOUGERE, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

## COUNSEL

Law Offices of Barry S. Zelner, Barry S. Zelner and Charles Fonarow for Plaintiff and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Jennifer A. D. Lehman, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**DOI TODD, J.**—The question presented in this civil rights case is whether the Los Angeles County Sheriff acts on behalf of the State of California or the County of Los Angeles in setting policies pertaining to the assignment of inmates within the Los Angeles County jail. The answer to this question depends on whether the sheriff's action in this regard can be characterized as a law enforcement function, in which case the sheriff acts as a state official

and is therefore immune from liability under title 42 United States Code section 1983 (section 1983), or whether it should be characterized as merely a custodial function, making the sheriff a local policymaker subject to suit under section 1983.

■ There is a clear split of authority on this issue between the Ninth Circuit Court of Appeals, finding that such action is only a custodial function (*Streit v. County of Los Angeles* (9th Cir. 2001) 236 F.3d 552 (*Streit*) and *Cortez v. County of Los Angeles* (9th Cir. 2002) 294 F.3d 1186 (*Cortez*)), and the California Supreme Court's more recent decision (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829 [11 Cal.Rptr.3d 692, 87 P.3d 1] (*Venegas*)), characterizing similar activity as a law enforcement function. Following *Venegas*, we conclude that the sheriff was carrying out a law enforcement function in setting policies pertaining to the placement of inmates at the county jail and therefore was acting as a state official immune from section 1983 liability. We therefore affirm the judgment of dismissal in favor of the county following the sustaining of the county's demurrer without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

The entirety of the factual allegations presented in this case is the following: While appellant was incarcerated at the county jail, he received threats against his life by other inmates due to his national ancestry, ethnicity, origin and race; despite his repeated requests to be moved to another facility, jail employees refused to move him; and he ultimately suffered injuries inflicted by inmates.[1]

Appellant sued the county for his injuries. The only cause of action at issue in this appeal is appellant's claim for violation of his civil rights under section 1983, alleging that he was deprived of "his right secured to him by the First, Fourth and Fourteenth Amendments of the U.S. Constitution" when he was subjected "to unreasonable and unnecessary punishment and cruelty" by being "placed in close proximity to known inmates who threatened his life and ultimately injured [him]."

The county demurred, asserting that it was immune from liability under section 1983 because the policies pertaining to the county jail are set by the

---

[1] On appeal from a judgment of dismissal following a demurrer sustained without leave to amend, we assume the truth of all well-pleaded facts, as well as those that are judicially noticeable, but not contentions, deductions or conclusions of fact or law. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

sheriff, who acts as a state official in operating the jail. The county's demurrer was sustained without leave to amend and this appeal followed.

## DISCUSSION

Appellant contends that the sheriff's function in determining where inside the jail a particular inmate should be assigned is merely a custodial function and not a law enforcement function. As such, appellant argues that the sheriff was not performing this function as a state actor, but as a local officer subject to suit under section 1983. He finds support for his position in the federal cases of *Streit* and *Cortez.* The county, on the other hand, contends that the Sheriff was performing a law enforcement duty on behalf of the state and is therefore immune from section 1983 liability. While acknowledging the federal authority, the county finds authority for its position in the more recent California Supreme Court decision in *Venegas.* As discussed below, we conclude that in setting and implementing policies and procedures pertaining to the placement of inmates at the county jail, the sheriff was performing a law enforcement function on behalf of the state and is therefore immune from section 1983 liability.

### I. *Standard of Review*

We review de novo a judgment of dismissal following the sustaining of a demurrer without leave to amend, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)

### II. *Section 1983*

Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

■ Cities, counties and local officers sued in their official capacity are considered "persons" under section 1983 and may be sued directly for constitutional violations carried out under their own regulations, policies, customs or usages by persons having " 'final policymaking authority' " over the actions at issue, though they cannot be held vicariously liable for their

subordinate's unlawful acts. (*Venegas, supra,* 32 Cal.4th at p. 829.) It is well established that states and state officers sued in their official capacity are not considered "persons" for purposes of section 1983 and are immune from liability under that statute by virtue of the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity. (*Venegas, supra,* at p. 829.) "The rule exempting the state and its officers applies to officers such as sheriffs if they were acting as state agents with final policymaking authority over the complained-of actions." (*Ibid.*)

 The parties agree that the sheriff has "final policymaking authority" in operating the Los Angeles County jail. (See *Brandt v. Board of Supervisors* (1978) 84 Cal.App.3d 598, 601 [147 Cal.Rptr. 468] (*Brandt*) ["The responsibility for operating jails in this state is placed by law upon the sheriff (Pen. Code, § 4000)"].) The parties disagree on whether the sheriff acts as policymaker for the state or for the county in deciding where to assign inmates within the jail.[2] "The determination whether a particular official acts for the state, on the one hand, or for the local governmental unit, on the other hand, is a question of law depending primarily upon the definitions of the official's functions contained in state constitutional, statutory, and decisional law." (*County of Los Angeles v. Superior Court* (1998) 68 Cal.App.4th 1166, 1171 [80 Cal.Rptr.2d 860] (*Peters*).) "This determination does not require an 'all-or-nothing' categorization applying to every type of conduct in which the official may engage. Rather, the issue is whether the official is a local policymaker with regard to the particular action alleged to have deprived the plaintiff of civil rights." (*Id.* at p. 1172.)

## III. Federal Authorities

The two Ninth Circuit cases on which appellant relies to support his position that the sheriff's function of assigning inmates in the county jail is merely a custodial function that renders the sheriff a local policymaker subject to section 1983 liability are *Streit, supra,* 236 F.3d 552, and *Cortez, supra,* 294 F.3d 1186, decided in 2001 and 2002.

In *Streit,* the court held that the sheriff's policy of detaining inmates beyond their scheduled release date while a computerized record search was conducted for outstanding warrants constituted a county administrative function and not a state law enforcement function and therefore the county could be subject to section 1983 liability. With respect to the issue of whether the

---

[2] As operator of the jail, the sheriff is responsible for developing and implementing policies pertaining to inmate housing. (Cal. Code Regs., tit. 15, § 1050.) Part of this task entails the establishment of policies and procedures for the segregation of inmates who pose a danger or are in need of protection "in order to obtain the objective of protecting the welfare of inmates and staff." (Cal. Code Regs., tit. 15, § 1053; see also *id.,* § 1006.)

sheriff was performing a law enforcement function, the *Streit* court merely distinguished itself factually from the state case cited by the county as the "controlling authority," *Peters, supra,* 68 Cal.App.4th 1166, 1168. (*Streit, supra,* 236 F.3d at p. 560.) In *Peters,* the plaintiff alleged that after posting bail she was improperly detained another 10 days in jail based on a warrant the sheriff and his deputies should have reasonably known did not apply to her and that the sheriff had a policy of detaining persons based on warrants for the arrest of other people. (*Peters, supra,* 68 Cal.App.4th at p. 1169.) The *Peters* court concluded that "in setting policies concerning release of persons from the Los Angeles County jail, the Los Angeles County Sheriff acts as a state officer performing state law enforcement duties, and not as a policy-maker on behalf of the County of Los Angeles." (*Id.* at p. 1178.)

The *Streit* court stated: "Although the general issue of overdetention was presented in both *Peters* and the cases at hand, the factual scenarios are quite distinct. In *Peters,* the [sheriff] acted upon a facially-valid warrant in its detention of the plaintiff, where as here, in conducting [automated, computerized database] checks, the [sheriff] is conducting its own administrative search for outstanding warrants, wants, or holds upon which it would be required to act, if they existed. Although this distinction may be perceived as subtle, for purposes of our analysis, it is critical. Acting upon a warrant is a law enforcement function with which the [sheriff] is tasked under California state law. [Citation.] Searching for wants and holds that may or may not have been issued for persons whom the state has no legal right to detain is an administrative function of jail operations for which the [sheriff] answers to the County. [Citations.]" (*Streit, supra,* 236 F.3d at p. 564.)

Following *Streit,* the Ninth Circuit in *Cortez, supra,* 294 F.3d 1186, held that the sheriff acted on behalf of the county in establishing and implementing a policy of separating gang members from nongang members inside the county jail. In *Cortez,* jail officials transferred an inmate, who was a former gang member, to a special gang unit upon learning he had a gang tattoo. Immediately upon the transfer, the inmate's life was threatened and his cell-mates ultimately beat him to death. (*Id.* at pp. 1187–1188.) Relying on *Streit,* the *Cortez* court found that the sheriff was "acting in his administrative capacity, rather than as a law enforcement officer" in setting policies pertaining to inmate housing. (*Cortez, supra,* at p. 1192.) The *Cortez* court likened the sheriff in his position as administrator of the jail to a public school administrator, stating: "Just as public school administrators may be held accountable for violence and harassment occurring on school grounds, so too are sheriffs responsible to prevent and quell violence in the jail, not as law enforcement officials, but as administrators wielding control over persons entrusted to their custody." (*Id.* at p. 1191.) The *Cortez* court therefore rejected the county's argument that the sheriff's actions in failing to protect the deceased inmate were taken in his law enforcement capacity to keep the

peace. (*Id.* at p. 1190.) The *Cortez* court further stated that even if it were to accept the county's characterization of the sheriff's actions as a failure to keep the peace, it would still find the sheriff was acting on the county's behalf, relying on other Ninth Circuit cases finding that California sheriffs act on behalf of the county in performing at least some of their law enforcement functions. (*Id.* at p. 1191.) In this vein, *Cortez* simply declined to follow *Peters*, stating that it was not bound by a California appellate court decision. (*Cortez, supra,* at p. 1191.) The *Cortez* court therefore concluded that because the sheriff had established and implemented the policy of segregating gang members in his capacity of administrator of the jail, he was acting on behalf of the county. (*Id.* at p. 1190.)

## IV. *California Supreme Court Decision*

■ Subsequent to *Streit* and *Cortez*, the California Supreme Court held in *Venegas, supra,* 32 Cal.4th at page 839 that "California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity." There, sheriff's deputies stopped the plaintiffs' car on suspicion of car theft, searched the car and the plaintiffs' home and later arrested the passenger, though no charges were ever filed against him. (*Id.* at pp. 827–828.) In reaching its decision, the *Venegas* court relied on *Peters,* which *Streit* and *Cortez* rejected, and its own earlier decision in *Pitts v. County of Kern* (1998) 17 Cal.4th 340 [70 Cal.Rptr.2d 823, 949 P.2d 920] (*Pitts*).

■ In *Pitts*, the California Supreme Court concluded that a California district attorney acts on behalf of the state, not the county, when preparing to prosecute and prosecuting crimes and training and developing policies for prosecutorial staff. The court reached its decision after analyzing various California constitutional and statutory provisions applicable to district attorneys. In *Peters, supra,* 68 Cal.App.4th 1166, the appellate court extended *Pitts's* analysis to California sheriffs in concluding that sheriffs act as state officers performing state law enforcement functions when setting policies concerning the release of jail inmates.

■ The *Peters* court emphasized that the identical constitutional and statutory provisions applicable to district attorneys in *Pitts* also applied to sheriffs. For example, article V, section 13 of the California Constitution provides that the Attorney General is the chief law enforcement officer of the state and "shall have *direct supervision over every district attorney and sheriff . . .* in *all matters pertaining to the duties of their respective offices,* and may require any of said officers to make reports *concerning the investigation, detection, prosecution, and punishment of crime* in their respective jurisdictions as the Attorney General may seem advisable." (*Peters, supra,* 68 Cal.App.4th at p. 1174, third italics added.) "Similarly, Government Code

section 12560, relating to sheriffs, is the nearly identical counterpart to Government Code section 12550, relating to district attorneys, . . . provides, 'The Attorney General has *direct supervision over the sheriffs of the several counties of the State . . . .*' " (*Id.* at pp. 1174–1175.) The *Peters* court also noted that state law imposes on county sheriffs the duty to enforce criminal law (Gov. Code, §§ 26600, 26601, 26602), and, most pertinent here, requires the sheriff to "take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it." (Gov. Code, § 26605; see *Peters, supra,* 68 Cal.App.4th at p. 1175.)

*Peters* further cited to *Brandt, supra,* 84 Cal.App.3d 598, which observed: "Except in rare instances, the [county] board of supervisors has no direct authority over the jail, and even where direct authority is given, its exercise is made discretionary by statute. The only clear and present duty enjoined by law upon a board of supervisors with regard to a county jail is to provide the sheriff with food, clothing, and bedding for prisoners (Pen. Code, § 4015) and to pay as a county charge other expenses incurred in the keeping of prisoners (Gov. Code, § 29602). . . . [¶] . . . [¶] . . . a board of supervisors has no legal authority to use its budgetary power to control employment in or operation of the sheriff's office [citation]. Only the sheriff has control of and responsibility for distribution and training of personnel and the specific use of the funds allotted to him." (*Brandt, supra,* 84 Cal.App.3d at pp. 601–602, fn. omitted; see *Peters, supra,* 68 Cal.App.4th at p. 1176.)

■ As in *Pitts,* the *Peters* court acknowledged that other constitutional and statutory provisions could support the argument that a sheriff acts as a county official. For example, article XI, section 1, subdivision (b), of the California Constitution provides for "an elected county sheriff" and section 4, subdivision (c), provides for "an elected sheriff" in each county. Government Code section 24000 includes sheriffs within the general category of county officers. But the court concluded that "these formal designations of sheriffs as county officials are outweighed by the functional independence of sheriffs from control by county boards of supervisors in performing their law enforcement functions." (*Peters, supra,* 68 Cal.App.4th at p. 1176.)

The *Venegas* court also reviewed (and criticized) two federal cases that reached seemingly contrary results to *Pitts* and *Peters,* concluding that the federal cases erred in failing to follow the guidance given by *Pitts* and *Peters.* (*Venegas, supra,* 32 Cal.4th at p. 835.) In *Brewster v. Shasta County* (9th Cir. 2001) 275 F.3d 803 (*Brewster*), the Ninth Circuit concluded that a sheriff's department was acting as a county agent during a murder investigation in which the plaintiff alleged that the sheriff's deputies manipulated a witness into making a false identification, failed to test physical evidence and ignored exculpatory evidence pursuant to the sheriff's policies on arrests and crime

investigations. Similarly, in its now vacated opinion in *Bishop Paiute Tribe v. County of Inyo* (9th Cir. 2002) 291 F.3d 549 (*Bishop*), the Ninth Circuit concluded that both the district attorney and its sheriff were acting as county officials in obtaining and executing an invalid search warrant aimed at uncovering welfare fraud. Both cases stressed the fact that sheriffs are identified as county officers in California's Constitution and that counties have supervision of sheriffs' activities under Government Code section 25303. But the *Venegas* court noted that "*Pitts* and *Peters* found these factors insufficient to establish a county agency relationship with, respectively, district attorneys and sheriffs when performing law enforcement functions." (*Venegas, supra,* 32 Cal.4th at p. 835.) The court in *Brewster* also relied on the fact that monetary damages assessed against sheriffs for section 1983 claims are paid by counties, not the state (Gov. Code, § 815.2). (*Brewster, supra,* 275 F.3d at pp. 807–808.) But the *Venegas* court disputed the relevance of this provision, finding that it failed to answer the question whether the sheriff was acting as a county employee during the events in question. (*Venegas, supra,* 32 Cal.4th at p. 835.) The *Venegas* court was also unimpressed with the *Bishop* court's concern that a contrary finding would immunize all local law enforcement agencies in California from prosecution under section 1983. The *Venegas* court noted that "merely because the sheriff is a state officer, as demonstrated by the foregoing constitutional and statutory provisions, does not mean that all local law enforcement officers are also to be deemed state officers." (*Venegas, supra,* at p. 838.)

The Supreme Court in *Venegas* stated that *Pitts* and *Peters* "more accurately reflect California law." (*Venegas, supra,* 32 Cal.4th at p. 830.) The court further stated: "*Pitts* and *Peters* are clearly confined, respectively, to situations in which district attorneys and sheriffs are actually engaged in performing law enforcement duties, such as investigating and prosecuting crime, or training staff and developing policy involving such matters." (*Id.* at p. 838.)

## V. *The Demurrer was Properly Sustained*

█ As an initial matter, we note that appellant does not allege any particular policy implemented by the sheriff that led to his injuries. A municipal entity can only be liable under section 1983 for constitutional violations carried out under its own "regulations, policies, customs, or usages." (*Venegas, supra,* 32 Cal.4th at p. 829.) For this reason alone, the demurrer was properly sustained to appellant's section 1983 claim. In his brief on appeal, appellant states: "It is clear that the policy of the County of Los Angeles. and its 'get tough' anti-gang philosophy concerning inmates is clearly responsible for the injuries caused by appellant herein . . . ." He further states that "[t]he actions of the sheriff's Department in this case . . .

deal with the keeping of and maintaining the peace between gang members and nongang members local to the Los Angeles County jail," and he refers to "the [S]heriff's conduct in keeping former gang members with current gang members." It thus appears that the same sheriff's policy of segregating gang members from other inmates at issue in *Cortez* is implicated here. But even assuming appellant could amend his complaint to allege the same policy at issue in *Cortez*, we are not persuaded by *Cortez*'s conclusion that in establishing and implementing policies and procedures for the safekeeping of inmates at the county jail the sheriff is merely performing a custodial or administrative function, rather than performing a law enforcement duty.

In *Peters*, the court rejected the argument that the sheriff is a county policymaker in " 'the specific function of operating the county jail system,' " stating: "This attempt to characterize the sheriff's conduct as merely operational or administrative is not persuasive on the facts of this case. The function involved in this case is determining whether to release a person who may be subject to arrest on an outstanding warrant. This is a law enforcement function. (Gov. Code, §§ 26601, 26602; Pen. Code, § 816; compare *Pitts, supra,* 17 Cal.4th at pp. 362–363 [rejecting any distinction between prosecuting and setting policies or training employees how to prosecute] with *id.* at p. 363 ['Our conclusion as to which entity the district attorney represents might differ were plaintiffs challenging a district attorney's alleged action or inaction related to hiring or firing an employee, workplace safety conditions, procuring office equipment, or some other administrative function arguably unrelated to the prosecution of state criminal law violations. Those considerations are not presented here.'].)" (*Peters, supra,* 68 Cal.App.4th at pp. 1177–1178.)

The sheriff's duties to preserve the peace (Gov. Code, § 26600) and to "prevent and suppress any affrays, breaches of the peace, riots, and insurrections" (Gov. Code, § 26602) are law enforcement functions and do not lose this status simply because they are carried out within the confines of a jail, which the sheriff is charged with operating (Gov. Code, § 26605). Inmates at the county jail typically consist of those persons who have been arrested for committing state crimes and are awaiting trial, persons who have already been sentenced, and those detained as witnesses or under civil process or contempt orders. We cannot find that a sheriff's policies relating to the safekeeping of such persons is merely an "administrative function arguably unrelated to the prosecution of state criminal law violations." (*Pitts, supra,* 17 Cal.4th at p. 363.)

Accordingly, we conclude that in setting and implementing policies and procedures concerning the assignment of inmates in the county jail, the sheriff acts as a state officer performing state law enforcement duties, and not

as a policymaker on behalf of the county. The county's demurrer to appellant's cause of action alleging liability of the county under section 1983 was properly sustained.

## DISPOSITION

The judgment in favor of the county is sustained. Each side to bear its own costs.

Boren, P. J., and Ashmann-Gerst, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 20, 2006, S145794.